[No. 51546-2-I.   Division One.   March 1, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL JOHN STANLEY, *Appellant*.

*Sarah M. Hrobsky, Gregory C. Link*, and *Sharon J. Blackford* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Carla B. Carlstrom, Deputy*, for respondent.

Baker, J. — During deliberations in Michael John Stanley's trial for felony harassment, a juror became ill. The trial court replaced the sick juror with an alternate juror without instructing the reconstituted jury on the record to begin deliberations anew. The record also does not show that the continued impartiality of the alternate juror was confirmed, nor does it indicate the presence or any input from the defendant or his counsel. The reconstituted jury found Stanley guilty of felony harassment. Stanley appeals on various grounds, including a claim that the trial court committed reversible error by failing to use proper procedure in seating the alternate juror. We agree, and reverse and remand for a new trial.

I

At the beginning of the second day of jury deliberations in Michael Stanley's trial, a juror called in sick. The jury had deliberated for approximately one hour. An alternate juror was substituted for the ill juror. The record does not indicate whether Stanley or his counsel was present when the alternate juror was seated, whether the court conducted a hearing to assess the alternate juror's continued impartiality, or whether the reconstituted jury was instructed to disregard all previous deliberations and begin deliberations anew.

The reconstituted jury deliberated for approximately 30 minutes before submitting a question to the court. The court answered the question about 30 minutes later and then, in less than an hour, the jury returned a verdict. The jury found Stanley guilty of the only count with which he was charged, felony harassment. After delivering the verdict, the jury was polled. Each juror confirmed that the verdict was both the verdict of the jury as a whole and the verdict of that individual juror.

The felony harassment charge was based on threats to kill that Stanley made while a resident at Pine Lodge, a prerelease facility run by the Department of Corrections.

From mid-April 2002 until the first week of June 2002, Stanley roomed with Ronald Davis at Pine Lodge. Approximately twice a week, Davis heard Stanley make threats to kill his stepfather, Eugene Lloyd. Stanley discussed shooting or hiring someone else to kill Lloyd, and also commented that hiring someone had a disadvantage because he wanted to see Lloyd's face. Stanley said he would not get caught because he would have an alibi.

In June or July 2002, Bill Stutz, a Department of Corrections employee, contacted Lloyd and explained that Stanley had been making threats to kill him. Lloyd took the threats to be "believable." He knew that Stanley had a bad temper, and believed Stanley was angry because he had told the police where to find Stanley. Over the telephone, Stanley had threatened "to get" Lloyd for helping the police.

Stanley was arrested and charged with felony harassment. During the trial, Lloyd testified about Stutz contacting him and telling him about Stanley's threats. Stanley's trial counsel did not object to Lloyd's testimony, nor did he call Stutz as a witness.

The court's instructions included a "to convict" instruction followed immediately by a special verdict instruction. The "to convict" instruction did not require the jury to decide whether the threat to cause bodily harm was also a threat to kill. The special verdict instruction did require the jury to make that determination.

## II

We review claims of manifest constitutional error de novo.[1]

---

[1] *State v. Pirtle*, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995); *State v. Curtis*, 110 Wn. App. 6, 11, 37 P.3d 1274 (2002); *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

■■ Stanley argues that by failing to determine on the record whether the alternate juror remained impartial, by failing to allow input from the defendant and his attorney, and by failing to instruct the reconstituted jury on the record to begin deliberations anew, the trial court committed reversible error.

CrR 6.5 governs the use of alternate jurors and provides that:

> [an] alternate juror may be recalled at any time that a regular juror is unable to serve . . . . If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew.[2]

In *State v. Ashcraft*,[3] we noted that CrR 6.5 does not specify that a hearing is required before replacing an initial juror with an alternate.[4] But the rule does "clearly contemplate a formal proceeding which may include brief voir dire to insure that an alternate juror who has been temporarily excused and recalled has remained . . . 'impartial.' "[5] We also noted that "the rule requires that a jury which has commenced deliberations before an initial juror is replaced by an alternate juror 'shall be instructed to disregard all previous deliberations and begin deliberations anew.' "[6]

Moreover, in *Ashcraft* we found troubling a "trial court's seating of an alternate juror without giving the parties any opportunity for input and without a record of reinstruction."[7] We held that "the trial court's failure to reinstruct the reconstituted jury *on the record* that it must disregard the previous deliberations and begin deliberations anew

---

[2] CrR 6.5.

[3] 71 Wn. App. 444, 859 P.2d 60 (1993).

[4] *Ashcraft*, 71 Wn. App. at 462.

[5] *Ashcraft*, 71 Wn. App. at 462.

[6] *Ashcraft*, 71 Wn. App. at 462-63 (quoting CrR 6.5).

[7] *Ashcraft*, 71 Wn. App. at 460.

was manifest constitutional error."[8] We also held that "the trial court should have made a reasonable effort to contact the parties through their counsel to obtain their input before rendering its discretionary decision" of seating an alternate juror.[9]

The State concedes that the trial court committed error, but argues that because the evidence on the record suggests that the reconstituted jury did deliberate anew, and because the evidence against Stanley was overwhelming, the trial court committed only harmless error by not instructing the reconstituted jury. With an error of constitutional magnitude, the State bears the burden of proving beyond a reasonable doubt that the error is harmless.[10] And the "reviewing court must be able to determine *from the record* that jury unanimity" was preserved.[11]

In *Ashcraft*, the initial jury deliberated for four hours without reaching a verdict and the reconstituted jury deliberated for two to three and one-half hours (depending on whether it stopped for lunch).[12] *Ashcraft* involved three separate counts with lesser included offense instructions for each of those counts.[13] We commented that "[i]t is not beyond the realm of reasonable possibility that . . . the alternate and the remaining 11 initial jurors could have concluded . . . that they need not deliberate anew as to any counts or issues upon which the initial 12 jurors may have reached agreement."[14]

The State argues that because the original jury deliberated for just over an hour and there was only one count,

---

[8] *Ashcraft*, 71 Wn. App. at 467.

[9] *Ashcraft*, 71 Wn. App. at 467.

[10] *Ashcraft*, 71 Wn. App. at 466 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

[11] *Ashcraft*, 71 Wn. App. at 466 (citing *State v. Badda*, 63 Wn.2d 176, 182-83, 385 P.2d 859 (1963)).

[12] *Ashcraft*, 71 Wn. App. at 466.

[13] *Ashcraft*, 71 Wn. App. at 466.

[14] *Ashcraft*, 71 Wn. App. at 466-67.

there is no risk that the reconstituted jury did not deliberate anew. The State also asserts that the fact that the reconstituted jury sent a question to the judge is another sign that the jury deliberated anew. Finally, the State notes that the jury was polled and each juror confirmed that the verdict was both his or her individual verdict as well as the verdict of the jury as a whole.

We conclude that just as in *Ashcraft*, the State has not met its heavy burden to prove beyond a reasonable doubt the harmlessness of the error.[15] Although consideration of the counts in *Ashcraft* was certainly a more complex undertaking, the deliberation of Stanley's guilt or innocence on the one count still required the jury to consider a number of issues. It is not beyond the realm of reasonable possibility that the reconstituted jury could have concluded that it need not begin deliberations anew as to any issues already considered by the original 12 jurors.

It is true that in a different context, our Supreme Court found the lack of complexity faced by a jury in a one-defendant, one-charge trial to be significant. In *State v. Mickens*,[16] the court commented that "since the jury was polled, there is no doubt that the verdict *was* unanimous and *was* the result of each juror's individual determination."[17] Later, in *State v. Badda*,[18] the court clarified that "the poll of the jury in the *Mickens* case . . . showed the verdict to be unanimous could confidently be stated, for it applied to one defendant charged with a solitary count of second-degree burglary."[19]

But even though Stanley, like Mickens, was a single defendant faced with only one charge, *Mickens* is inapposite. The court in *Mickens* addressed the lack of a jury instruction regarding the requirement of unanimity, not the

---

[15] *Ashcraft*, 71 Wn. App. at 466.

[16] 61 Wn.2d 83, 377 P.2d 240 (1962).

[17] *Mickens*, 61 Wn.2d at 87.

[18] 63 Wn.2d 176, 385 P.2d 859 (1963).

[19] *Badda*, 63 Wn.2d at 182.

lack of an instruction to begin deliberations anew.[20] The jury had not been reconstituted. All 12 jurors in *Mickens* had been present for all of the deliberations, while the alternate juror in Stanley's trial was present only for the second day of deliberations. Polling the jury cannot substitute for the procedural omissions in this record. The State cannot show on the record beyond a reasonable doubt that the jury began deliberations anew. The error was not harmless.

The State's argument that overwhelming evidence against Stanley renders any error harmless also fails. The evidence supporting the verdict is substantial but not so overwhelming as to necessarily lead 12 fair-minded individuals to only one conclusion.[21]

The State requests that if we conclude that the error was not harmless, we remand to give the State an opportunity to further develop the record. But a hearing at this late date is not appropriate. We reverse and remand for retrial.

Because we have reversed the conviction, we do not determine whether the trial court's seating of the alternate juror without determining on the record his continued impartiality was reversible error. Nevertheless, we note that this was error, and that the trial court compounded the error by not seeking out the parties through counsel to obtain input before seating the alternate juror.

A majority of the panel has determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports. But the remainder of this opinion is ordered to be filed for public record pursuant to RCW 2.06.040.

Reversed.

KENNEDY and ELLINGTON, JJ., concur.

---

[20] *Mickens*, 61 Wn.2d at 87.

[21] *Ashcraft*, 71 Wn. App. at 467.