255 P.3d 809 (2011)
161 Wash.App. 844
STATE of Washington, Respondent,
v.
Fernando Feliciano CHIRINOS, Appellant.
No. 64725-3-I.
Court of Appeals of Washington, Division 1.
May 16, 2011.
*810 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Jeffrey C. Dernbach, King County Prosecutor, Seattle, WA, for Respondent.

OPINION PUBLISHED IN PART
DWYER, C.J.
¶ 1 Where the trial court seats an alternate juror after temporarily excusing that juror, the court must instruct the reconstituted jury to begin deliberations anew. The trial court need not, however, determine on the record that the alternate juror remains impartial, as the rule governing the seating of alternate jurors confers upon the trial court the discretion to determine whether such an inquiry is necessary. Because the trial court herein complied with the applicable rule upon seating the alternate juror, Fernando Chirinos was not denied his constitutional right to an impartial jury. Given that Chirinos's remaining claims are similarly without merit, we affirm.

I
¶ 2 In April 2009, Fernando Chirinos was charged by information with burglary in the first degree, robbery in the first degree, and forgery. The charges were based upon a series of events that occurred after Chirinos *811 asserted that his mobile device had been stolen by a friend of James Holt. According to the certification for determination of probable cause to charge Chirinos with those crimes, Chirinos broke into Holt's apartment and demanded that Holt pay him $4,000 as "collateral" for the mobile device. Holt told Chirinos that he did not have $4,000 at his home but that he had $1,100 in the bank. Chirinos stayed the night at Holt's apartment until the bank opened the next morning. Chirinos then went with Holt to the bank, where Holt withdrew $1,100 and gave it to Chirinos. Holt returned to his apartment. Two days later, he noticed that the extra set of keys to his car was missing. Holt then noticed that his car was missing and called the police. Holt later informed the police that several bank checks were also missing from his apartment.
¶ 3 Chirinos was subsequently arrested and booked into the King County jail. Chirinos had a preexisting injury that required medical treatment. On May 18, 2009, he was transported by King County corrections staff to an appointment at Harborview Hospital in downtown Seattle. After the appointment, Chirinos fled. He ran toward James Street and leaped into the open window of Alana Turner's car. With his legs still protruding from the car window, Chirinos grabbed the steering wheel and attempted to press the accelerator with his hand. He repeatedly yelled at Turner to "get going now." Report of Proceedings (RP) (Oct. 26, 2009) at 16. Turner screamed and pulled the keys from the ignition so that Chirinos could not get control of the car. RP (Oct. 26, 2009) at 15. A bystander responded to Turner's screams and attempted to pull Chirinos from the car. Pursuing corrections officers then took Chirinos back into custody. The State thereafter amended the information, based upon this incident, to include additional counts of escape in the second degree and attempted robbery in the second degree.[1]
¶ 4 Trial commenced on October 15, 2009. After instructing the jury and allowing counsel to present closing arguments, the trial court temporarily excused Juror 6, the alternate juror. The court instructed her to continue to observe her obligation not to discuss the case:
But there are a couple of things I want to admonish you to do for me. In the unlikely event that for some reason we should lose one of the jurors in the panel before they are able to complete their job here, I want to have the possibility of bringing you back in and recommencing deliberations. So I would appreciate you continuing to abide by that admonition not to discuss the case with anyone until you find out the jury has reached a verdict. I know you are going away and I am not even quite sure when you were coming back or where you are going, and maybe you don't know either, but I would like to keep you sort of in the batter's box in case I need you.
RP (Oct. 29, 2009) at 126. The following week, Juror 6 was called to replace a deliberating juror who was unable to continue deliberations due to work commitments. Due to the illness of another deliberating juror, the jury had deliberated for only about an hour before Juror 6 returned. Upon seating the alternate juror, the trial court instructed the jury to begin its deliberations anew:
And now that she's been seated as a juror in the case, you are required to disregard all previous deliberations and begin your deliberations anew. Is that clear to you all? I see heads nodding in affirmance. I just needed to give you that instruction and excuse you back to recommence your deliberations. Okay? Thank you, folks, for your patience.
RP (Nov. 3, 2009) at 71.
¶ 5 Based upon the incident involving Holt, the jury found Chirinos guilty of residential burglary, extortion in the first degree, forgery, and kidnapping in the first degree.[2] *812 Based upon the incident involving Turner, the jury found Chirinos guilty of escape in the second degree and attempted robbery in the second degree.
¶ 6 Chirinos appeals.

II
¶ 7 Chirinos contends that his right to an impartial and unanimous jury was violated where the trial court seated an alternate juror without first verifying on the record that she remained impartial and unbiased.[3] We disagree.
¶ 8 Criminal Rule 6.5 governs the use of alternate jurors. It provides that
[s]uch alternate juror may be recalled at any time that a regular juror is unable to serve.... If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew.
CrR 6.5. Juror replacement implicates "a defendant's constitutional right to a fair trial before an impartial jury and to a unanimous verdict." State v. Ashcraft, 71 Wash.App. 444, 463, 859 P.2d 60 (1993). Thus, manifest constitutional error occurs where a trial court fails to instruct a reconstituted jury on the record to disregard previous deliberations and begin deliberations anew. Ashcraft, 71 Wash.App. at 467, 859 P.2d 60.
¶ 9 The applicable rule further provides that
[w]hen jurors are temporarily excused but not discharged, the trial judge shall take appropriate steps to protect alternate jurors from influence, interference or publicity, which might affect that juror's ability to remain impartial and the trial judge may conduct brief voir dire before seating such alternate juror for any trial or deliberations.
CrR 6.5 (emphasis added). CrR 6.5 does "contemplate a formal proceeding which may include brief voir dire to insure that an alternate juror who has been temporarily excused and recalled has remained protected from `influence, interference or publicity, which might affect that juror's ability to remain impartial.'" Ashcraft, 71 Wash.App. at 462, 859 P.2d 60 (quoting CrR 6.5). However, its permissive language indicates that the trial court is not required to conduct a hearing prior to replacing a deliberating juror with an alternate juror. Rather, the trial court has the discretion to do so where the court deems it necessary to ensure that the alternate juror has remained impartial.
¶ 10 The discretion conferred upon the trial court by CrR 6.5, however, may be improperly exercised where the trial court does not provide notice to the parties prior to seating an alternate juror. In State v. Stanley, 120 Wash.App. 312, 85 P.3d 395 (2004), we reversed the defendant's conviction because the trial court had not instructed the reconstituted jury to disregard its previous deliberations and to begin deliberations anew. In so doing, this court remarked that the trial court had erred in an additional respect:
Because we have reversed the conviction, we do not determine whether the trial court's seating of the alternate juror without determining on the record his continued impartiality was reversible error. Nevertheless, we note that this was error, and that the trial court compounded the error by not seeking out the parties through counsel to obtain input before seating the alternate juror.
Stanley, 120 Wash.App. at 318, 85 P.3d 395.
¶ 11 Because, therein, the defendant's conviction was reversed based upon the trial court's failure to instruct the reconstituted jury to begin its deliberations anewa requirement *813 clearly mandated by CrR 6.5 that part of the Stanley decision expounding upon additional error is dictum. Moreover, in that case, we found problematic the apparent absence of an opportunity for the parties to provide input regarding the replacement of a deliberating juror with an alternate juror. Stanley, 120 Wash.App. at 315, 318, 85 P.3d 395. Thus, the quoted language from Stanley should not be read as divesting the trial court of the discretion conferred upon it by CrR 6.5, thus changing the plain language of that rulewhich states that the trial court may conduct a brief voir dire before seating an alternate jurorfrom permissive to directory. Rather, this portion of our decision in Stanley should be read by trial judges as an indication that the discretion conferred upon them by CrR 6.5's permissive language should be exercised only after giving notice to the parties, coupled with an opportunity to be heard. Such a practice ensures that the defendant's constitutional right to a trial by an impartial jury is adequately protected.
¶ 12 Here, the trial court properly complied with CrR 6.5 by instructing the jury to begin its deliberations anew upon seating the alternate juror. The court also properly instructed Juror 6, prior to temporarily excusing her, to continue to abide by her obligation to not discuss the case. Contrary to Chirinos's contention that the State must "prove [that] the temporarily discharged juror remained unbiased," Appellant's Br. at 11, the court rules require only that the trial court "take appropriate steps to protect alternate jurors from influence, interference or publicity." The trial court did that here, by admonishing the alternate juror, prior to her temporary excusal, to continue to observe the duties that she had earlier sworn to undertake. Moreover, the seating of the alternate juror herein did not occur without notice to, and an opportunity to provide input by, the parties. Without some indication that Juror 6 had become biased during her temporary excusal, the trial court was no more obligated to voir dire Juror 6 upon her return than it was to voir dire the other jurors, who had gone home for the weekend, before permitting them to continue deliberation.
¶ 13 The trial court has the discretion to determine whether to voir dire an alternate juror upon his or her return. CrR 6.5 ("the trial judge may conduct brief voir dire before seating such alternate juror" (emphasis added)). Nothing in the record indicates that this trial court improperly employed its discretion. Because the trial court properly instructed the alternate juror to continue to abide by her obligations and, upon her seating, instructed the reconstituted jury to begin its deliberations anew, Chirinos was not deprived of his right to an impartial jury.
¶ 14 The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.
¶ 38 We concur: APPELWICK, and BECKER, JJ.
NOTES
[1] At trial, the State again amended the information, adding an additional count of kidnapping in the first degree for the incident involving Holt. The State also added a deadly weapon enhancement to the burglary and kidnapping charges, based upon allegations that Chirinos was armed with a knife during the incident involving Holt.
[2] At trial, the jury received instructions on residential burglary, a lesser crime of burglary in the first degree, and extortion in the first degree, a lesser crime of robbery in the first degree.
[3] The right to an impartial jury is guaranteed by article 1, section 22 of the Washington State Constitution and by the Sixth Amendment to the United States Constitution.

Although Chirinos characterizes this assignment of error as implicating his right to both a unanimous and an impartial jury, he does not provide argument specifying how the trial court purportedly violated his right to a unanimous jury. For this reason, we hereafter reference this assignment of error as implicating only Chirinos's right to an impartial jury.