# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46633-3-II |
| Respondent, | (Consolidated) |
| v. | UNPUBLISHED OPINION |
| NATHANIEL W. MILES, | |
| Appellant. | |
| STATE OF WASHINGTON, | No.  46636-8-II |
| Respondent, | |
| v. | |
| ANTHONY RALLS, | |
| Appellant. | |

BJORGEN, C.J. — Nathaniel Miles and Anthony Ralls appeal their 2013 convictions for

first degree murder stemming from the 1988 killing of Bernard Houston.  Miles argues that (1)

his conviction was not supported by sufficient evidence of the necessary mens rea, and both

Miles and Ralls argue that the trial court erred by (2) issuing jury instructions that misstated the

law and commented on the evidence, (3) seating a dismissed alternate juror without instructing

that juror to remain impartial or determining whether the juror had been tainted, (4) answering a

jury question in a manner that misstated the law and commented on the evidence, and (5)

imposing discretionary legal financial obligations (LFOs) without first inquiring into Miles' and Ralls' ability to pay. Also, Miles and Ralls each filed supplemental briefs asking that appellate costs not be assessed against them.

We hold that (1) sufficient evidence supported Miles' conviction, (2) the jury instructions neither misstated the law nor commented on the evidence, (3) the record is insufficient to review whether the alternate juror was dismissed and whether the trial court properly instructed that juror, and (4) the trial court neither misstated the law nor commented on the evidence in its response to the jury question, but that (5) the trial court erred by failing to inquire into Miles' and Ralls' ability to pay before imposing discretionary LFOs. Accordingly, we affirm Miles' and Ralls' convictions but remand for the trial court to make an individualized inquiry into their abilities to pay discretionary LFOs, consistently with *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015). We also exercise our discretion not to impose appellate costs on either defendant.

FACTS

On August 28, 1988, Houston and a companion, both members of the Crips gang from the Hilltop neighborhood of Tacoma, committed three daytime drive-by shootings in the city's Eastside neighborhood. Several members of the Eastside Bloods gang, among them Miles and Ralls, then decided to go to the Hilltop area, find Houston and Michael Jeter, whom they suspected of being Houston's companion, and respond in kind. The group found Houston's vehicle, with Houston inside, and gunfire erupted. Houston was shot and killed in the encounter.

The initial police investigation following the shooting produced no arrests, but police received new information in 2001 and investigated further. Based on the results of this investigation, on July 29, 2014, the State charged Miles and Ralls with first degree murder of

Houston on two alternative theories: premeditated murder and murder with extreme indifference to human life.

1.     Evidence Related to Self-Defense and Mens Rea

At trial, the State presented testimony that Miles and Ralls planned to retaliate against Houston and departed with others in two different cars to confront him. Witnesses testified that some among the group, including Miles and Ralls, had guns. At the time of the shooting, Houston was with three companions in a residential neighborhood in an area claimed by Houston's gang as its "turf." Report of Proceedings (RP) at 764-68, 870-75, 1407. According to one witness, Miles and Ralls' group arrived brandishing firearms and announcing their gang affiliation.

Houston's companions testified that they attempted to flee after seeing the cars, perceiving that a gunfight was likely. According to other witnesses, after Miles and Ralls' group arrived, Houston fired on them and Miles and Ralls' group returned fire. One of Houston's companions testified that he was shot in the leg as he ran away. Houston was shot in the head and killed.

2.     Jury Instructions

Miles and Ralls proposed self-defense instructions that did not include information regarding either first aggression or retaliation by the defendants. The State proposed instructions on the legal effect of both first aggression and retaliation on the applicability of a self-defense homicide justification, which the trial court ultimately included in its instructions to the jury and which are set out in the Analysis section below. Miles and Ralls objected to the inclusion of these instructions.

The State also proposed an accomplice liability instruction, reproduced in the Analysis section below, modeled after 11 *Washington Practice Jury Instructions: Criminal* 10.51, at 217 (3d ed. 2008). The trial court gave this instruction, over defense objection.

3.      Excusal and Seating of Alternate Juror

On the last day of trial, the trial court became aware that juror 4 did not want to deliberate the next day because it would interfere with a scheduled vacation. The trial court suggested replacing juror 4 with an alternate juror, but Ralls' counsel objected to the plan. The trial court left the jury intact.

Following closing arguments, the trial court "thanked and excused" the alternate jurors, and the jury began its deliberations. RP at 2776. The record does not reflect whether the trial court instructed the alternate jurors to remain impartial and refrain from discussing the case with others.

Juror 4 failed to show up the next day to deliberate, and the trial court replaced her with one of the excused alternates. Ralls objected to this replacement without elaboration as to his grounds for objection. With no further discussion or proceedings, the trial court seated the alternate juror and instructed the jury to "disregard all previous deliberations and begin deliberations anew." RP at 2788.

4.      Jury Question

On the second day of deliberations, the jury sent a question to the trial court regarding the accomplice liability instruction. The question read:

> If we determine a defendant is an accomplice, are they Liable for the same crime?
> We are having confusion distinguishing between instructions # 3 and # 9.

Clerk's Papers (CP) at 708.

Both Miles and Ralls asked the trial court to tell the jurors to refer to their instructions, with no further elaboration. The State requested that the trial court instruct the jury, "If you determine that a defendant is an accomplice to the charge you are deliberating on, they are guilty of that crime." RP at 2800.

Ultimately, the trial court disagreed with both proposals and issued the following response:

> Instruction #3 instructs you that each defendant's charge is to be assessed by you independently and so your verdict on one count as to one defendant should not control your verdict on any other count or as to the other defendant.
>
> Instruction #9 instructs that a person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime. Instruction #9 further defines when a person is an accomplice.

CP at 709. Both Miles and Ralls objected.

The jury acquitted Miles and Ralls of premeditated murder but convicted them of murder with extreme indifference to human life.

5. <u>Sentencing</u>

Miles and Ralls were each sentenced to 333 months' imprisonment. The trial court also imposed LFOs totaling $2,800, of which $2,000 were for discretionary LFOs. The trial court did not inquire as to whether Miles and Ralls would be able to pay the LFOs, but neither Miles nor Ralls objected to their imposition.

Miles and Ralls appeal their convictions and the LFOs imposed as part of their sentences.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Miles argues that the evidence presented to the jury was insufficient to establish that he acted with extreme indifference to human life. We disagree.

In a criminal trial, the State bears the burden of proving all elements of the charged offenses beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We review de novo whether the evidence before the jury was sufficient to support a verdict of guilt, viewing all evidence in the light most favorable to the State. *Id.* We consider circumstantial evidence and direct evidence to be equally reliable for this purpose. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). We will conclude that the evidence is sufficient to support the jury's verdict if any rational trier of fact could have found the elements of the charged crimes beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903.

The jury found Miles and Ralls guilty of first degree murder with a mens rea of extreme indifference to human life. Under Washington's first degree murder statute,

> (1) A person is guilty of murder in the first degree when:
> . . . .
> (b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person.

RCW 9A.32.030; *see also* CP at 744 (jury instruction). To prove murder with this mens rea, the State must prove that

> the defendant "(1) acted with extreme indifference, an aggravated form of recklessness, which (2) created a grave risk of death to others, and (3) caused the death of a person."

*State v. Henderson*, 180 Wn. App. 138, 145, 321 P.3d 298 (2014), *aff'd*, 182 Wn.2d 734 (2015) (quoting *State v. Yarbrough*, 151 Wn. App. 66, 82, 210 P.3d 1029 (2009)). This requires proof that the defendant created "a very high degree of risk, which 'elevates the level of recklessness to an extreme level, thus manifesting an extreme indifference to human life.'" *Henderson*, 180 Wn. App. at 145 (internal quotation marks omitted) (quoting *State v. Dunbar*, 117 Wn.2d 587, 594, 817 P.2d 1360 (1991)).

6

To prove that the defendant acted with extreme indifference to human life, the State must prove that the defendant acted without regard to human life *in general*, as opposed to acting without regard to the life of the victim specifically. *State v. Pettus*, 89 Wn. App. 688, 694, 951 P.2d 284 (1998), *abrogated on other grounds by State v. Gamble*, 154 Wn.2d 457, 114 P.3d 646 (2005); *State v. Berge*, 25 Wn. App. 433, 437, 607 P.2d 1247 (1980). Washington courts have found that the evidence did not support a verdict of extreme indifference where the defendant fired a gun wildly at the victim in the defendant's own home, *Berge*, 25 Wn. App. at 434, 436-37; or where the defendant placed a toddler into a bath of extremely hot water, *State v. Anderson*, 94 Wn.2d 176, 178-79, 192, 616 P.2d 612 (1980).

Washington courts, however, have found that the evidence was sufficient to support a conviction where the defendant engaged in a drive-by shooting in a residential neighborhood, *Pettus*, 89 Wn. App. 691-92, 695; and where the defendant fired a gun at a vehicle through his car window while driving down the highway, *State v. Pastrana*, 94 Wn. App. 463, 469, 473, 972 P.2d 557 (1999), *abrogated on other grounds by Gamble*, 154 Wn.2d 457. The distinction between the two lines of cases is that in the former, "only the life of the victim was endangered," while in the latter the defendants "created a grave risk of death to others who were in the vicinity." *Pastrana*, 94 Wn. App. at 473.

Miles argues that the jury could not have found beyond a reasonable doubt that he created a grave risk of death to others in the vicinity because evidence showed that he was specifically targeting Houston and posed no danger to others. However, like the defendant in *Pettus*, Miles and Ralls chose to fire their weapons at their intended victim in a residential neighborhood. Evidence showed that Houston's companions were nearby at the time of the shooting, and that the shooting took place near residences. Further, a 24-hour convenience store was nearby with

the owners inside, and one of Houston's companions tried to run to the store to hide. The owners, though, would not open the door because they heard gunfire. The evidence showed that Miles and Ralls' group fired multiple shots toward Houston. One of those shots hit one of Houston's companions, who was fleeing toward the convenience store.

Although Miles may have been targeting Houston, his actions put others at the scene or in the nearby residences at risk of death from stray bullets, ricochet or crossfire. The evidence supported a finding beyond a reasonable doubt that Miles acted with extreme indifference to human life and, therefore, that the evidence against Miles was sufficient to support the jury's verdict.

## II. JURY INSTRUCTIONS

Miles and Ralls argue that the trial court committed instructional error by issuing (1) self-defense instructions that emphasized the legal effect of retaliation and provocation, and (2) an accomplice liability instruction that misstated the applicable mens rea. We disagree and hold that the trial court did not err by issuing the challenged instructions.

In general, we review the trial court's choice of jury instructions for an abuse of discretion. *State v. Green*, 182 Wn. App. 133, 152, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014). A trial court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds." *State v. Robinson*, 193 Wn. App. 215, 217-18, 374 P.3d 175 (2016). Jury instructions must be supported by substantial evidence. *Green*, 182 Wn. App. at 152; *State v. Douglas*, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005). Such instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law. *State v. Soper*, 135 Wn. App. 89,

101, 143 P.3d 335 (2006). We review de novo whether instructions are legally correct.

*Douglas*, 128 Wn. App. at 562.

1.      Self-Defense Instructions

Miles and Ralls challenge the trial court's instructions to the jury regarding the

applicability and contours of the law of self-defense, arguing that (1) the instructions were not

supported by the evidence and misstated the applicable law, and (2) the instruction on retaliatory

action amounted to judicial commentary on the evidence. We disagree with both arguments.

A.  Instructional Error

Jury instruction 18 described the general law of self-defense:

> It is lawful for a person who is in a place where that person has a right to be
> and who has reasonable grounds for believing that he is being attacked to stand his
> ground and defend against such attack by the use of lawful force. The law does not
> impose a duty to retreat.

CP at 730. Instruction 19 described the effect of the defendant's provocation or aggression on

the lawfulness of subsequent deadly force used in self-defense:

> No person may, by any intentional act reasonably likely to provoke a
> belligerent response, create a necessity for acting in self-defense or defense of
> another and thereupon kill another person. Therefore, if you find beyond a
> reasonable doubt that the defendant or an accomplice was the aggressor, and that
> the defendant's or an accomplice's acts and conduct provoked or commenced the
> fight, then self-defense or defense of another is not available as a defense.

CP at 730-31. Instruction 19A then distinguished retaliation and revenge from lawful self-

defense: "The right of self-defense does not permit action done in retaliation or in revenge." CP

at 732.

Ralls argues that instruction 19A misstated the law regarding killings "done in

retaliation" because "[e]ven if the slayer has other thoughts or feelings, a homicide is justifiable

if it qualifies as self-defense." Br. of Appellant (Ralls) at 18. However, our Supreme Court has

held that the exact language used in instruction 19A correctly states the law regarding retaliatory killings. *State v. Studd*, 137 Wn.2d 533, 550, 973 P.2d 1049 (1999). There is a fundamental distinction between actions taken to retaliate and actions taken in self-defense, and that distinction revolves around the reasonable anticipation of imminent danger. *See State v. Janes*, 121 Wn.2d 220, 240, 850 P.2d 495 (1993). We follow the court in *Studd* and hold that instruction 19A, considered in the context of the trial court's instructions to the jury as a whole, adequately conveyed this distinction.

Miles and Ralls both argue that the trial court erred by giving instruction 19 regarding the effect of the defendant's provocation. According to our Supreme Court, "[a]n aggressor instruction is appropriate if there is conflicting evidence as to whether the defendant's conduct precipitated a fight." *State v. Riley*, 137 Wn.2d 904, 910, 976 P.2d 624 (1999). Here, testimony showed that Ralls had chased Houston from Ralls' neighborhood following shootings earlier in the day and that Miles and Ralls were among a group that descended on Houston's vehicle that night, displaying firearms and announcing their gang affiliation. Testimony also placed the events in the context of an escalating pattern of violence between the gangs. This evidence was sufficient for the jury to find that Miles and Ralls provoked a violent response from Houston, and therefore, that their own violent response was unjustified. Given this evidence and the importance of the instruction to the State's theory of the case, the trial court did not err in instructing the jury on the law regarding provocation.[1]

Ralls argues that his and Miles' acts could not be provocative as a matter of law because they were lawful acts and, therefore, that the trial court erred in instructing the jury on

---

[1] It likely would have been error for the trial court to *deny* such an instruction, as it was supported by substantial evidence and was crucial to the State's theory of the case.

provocation. As Ralls notes, words alone do not qualify as provocation. *Riley*, 137 Wn.2d at 910-11. Ralls asks us to extend this principle and hold that lawful acts in general cannot constitute provocation as a matter of law.

However, a defendant may provoke a victim, and thereby negate the possibility that the defendant acted in self-defense, by intentionally acting in a manner the victim reasonably perceives as a threat to use unlawful deadly force.[2] *See State v. Wingate*, 155 Wn.2d 817, 823, 122 P.3d 908 (2005). A defendant's provocative acts must be considered in context, even if the individual acts were not unlawful. *See Riley*, 137 Wn.3d at 909-10. As long as the victim reasonably perceived an imminent threat to use unlawful deadly force, an aggressor/provocation instruction of the sort given here is proper. *Id.* The evidence shows that Miles and Ralls engaged in activities that Houston may reasonably have perceived as threatening deadly force under the circumstances. Miles and Ralls sought Houston out with a plan to retaliate. They also displayed firearms and announced their group affiliation. Therefore, the trial court did not abuse its discretion in giving instruction 19.

B. Judicial Commentary on the Evidence

Both Miles and Ralls argue that the trial court improperly commented on the evidence by issuing instruction 19A. Specifically, they argue that the retaliation instruction improperly emphasized the State's main argument—that Miles and Ralls were aggressors in the altercation, motivated by vengeance to retaliate against Houston. We disagree.

---

[2] Ralls also argues that instruction 19 did not adequately convey that provocation is subject to an objective reasonableness standard. However, the first sentence of the instruction clearly defined provocation as "any intentional act reasonably likely to provoke a belligerent response." CP at 731. This was an accurate statement of law. *See Wingate*, 155 Wn.2d at 821-22.

The trial court may not comment on the evidence before the jury, as such commentary may unduly influence the jury's deliberations. *State v. Hermann*, 138 Wn. App. 596, 606, 158 P.3d 96 (2007). "A jury instruction can constitute a comment on the evidence if it reveals the court's attitude toward the merits of the case or the court's evaluation of a disputed issue." *Id*. "'A jury instruction that does no more than accurately state the law pertaining to an issue, however, does not constitute an impermissible comment on the evidence by the trial judge.'" *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015) (quoting *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001)). "We review jury instructions de novo, within the context of the jury instructions as a whole." *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Judicial commentary on the evidence is presumptively prejudicial, "unless it affirmatively appears in the record that no prejudice could have resulted from the comment." *State v. Lane*, 125 Wn.2d 825, 838-39, 889 P.2d 929 (1995)).

An instruction that indicates what weight the jury should give to particular evidence constitutes improper commentary on that evidence. *Hermann*, 138 Wn. App. at 607. However, it is unclear how an instruction simply distinguishing retaliation from self-defense could favor any particular view on the evidence. The instruction at issue did not promote the State's interpretation of the evidence simply because it was important to the State's argument, just as instructing the jury on self-defense did not favor the defendants' interpretation of the evidence. Had the instruction stated that any particular evidence indicated retaliation rather than self-defense, it would have been a comment on the evidence, *see Hermann*, 138 Wn. App. at 606-07, but instruction 19A included no such statement. The fact that the State crafted its closing argument around the instruction did not transmute it into judicial commentary.

12

Moreover, as noted above, our Supreme Court has approved of the exact language used in instruction 19A. *Studd*, 137 Wn.2d at 550. The court in *Studd* specifically noted that the language "correctly state[s] the law, and [does] not unfairly emphasize the State's theory of the case or, in any way, comment upon the evidence." *Id*.; *see also State v. Cook*, 86 Wn. App. 1099 (1997) (unpublished case, reviewed in *Studd*) (noting that the language "supported the State's theory"), *aff'd sub nom. Studd*, 137 Wn.2d 533. Accordingly, we hold that the trial court did not comment on the evidence by issuing instruction 19A.

2.      Accomplice Liability Instruction

Miles and Ralls argue that the trial court also erred by giving the jury an instruction that misstated the law of accomplice liability by mischaracterizing the mens rea requirement. We disagree.

Instruction 9 stated:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 721.

13

Miles and Ralls contend that the mens rea necessary to establish accomplice liability is intent to aid the principal in the commission of the crime or initiate the criminal enterprise. However, it is clear that knowledge, not intent, is required to satisfy the mens rea element of accomplice liability. The applicable statute, RCW 9A.08.030, mirrors the elements of instruction 9, requiring that an accomplice aid or abet in the commission of the crime "[w]ith knowledge that it will promote or facilitate the commission of the crime." RCW 9A.08.020(3)(a). Interpreting this requirement, our Supreme Court recently noted that

> a jury can convict a defendant as an accomplice even if that defendant has only "knowledge that [his or her acts] will promote or facilitate the commission of a crime," not intent.

*State v. Walker*, 182 Wn.2d 463, 493, 341 P.3d 976 (alteration in original) (quoting *State v. Hoffman*, 116 Wn.2d 51, 104, 804 P.2d 577 (1991)), *cert. denied*, 135 S. Ct. 2844 (2015).

We have also held that accomplice liability based on aiding the principal in commission of the crime "'requires the criminal mens rea to aid or agree to aid the commission of a specific crime *with knowledge the aid will further the crime*.'" *State v. Ferguson*, 164 Wn. App. 370, 376, 264 P.3d 575 (2011) (emphasis added) (quoting *State v. Coleman*, 155 Wn. App. 951, 960-61, 231 P.3d 212 (2010)). This knowledge requirement ensures that an accomplice's actions are "directed at and likely to incite or produce imminent lawless action" without prohibiting "mere advocacy of law violation" in general. *Ferguson*, 164 Wn. App. at 376. Thus, one is an accomplice within the meaning of RCW 9A.08.020(3)(a) when one aids or agrees to aid in the commission of the crime with the mens rea of knowledge that the aid will further the crime.

Instruction 9 plainly expressed that Miles and Ralls could be considered accomplices only if they acted "with knowledge that it will promote or facilitate the commission of the crime." CP at 721. The trial court did not err by giving the jury that instruction.

14

### III. SEATING THE ALTERNATE JUROR

Miles and Ralls argue that the trial court violated their rights to an impartial jury by excusing the alternate jurors without taking proper steps to ensure that they remained untainted, and then recalling and seating an alternate juror. However, because the record is inadequate to permit evaluation of the trial court's instructions to the outgoing alternate jurors, we do not review whether the trial court took appropriate steps to ensure that the alternate jurors were protected from influences which might affect their ability to remain impartial.

Replacement of jurors implicates a defendant's constitutional right to an impartial jury. *State v. Feliciano Chirinos*, 161 Wn. App. 844, 848, 255 P.3d 809 (2011). We review a trial court's decision to seat an alternate juror for an abuse of discretion. *State v. Johnson*, 90 Wn. App. 54, 73, 950 P.2d 981 (1998). As noted above, a trial court abuses its discretion when acts in a manifestly unreasonable manner or bases its decision on untenable grounds. *Robinson*, 193 Wn. App. at 217-18.

Excusal and recall of alternate jurors is governed by CrR 6.5. That rule reads in relevant part:

> Alternate jurors who do not replace a regular juror may be discharged or temporarily excused after the jury retires to consider its verdict. When jurors are temporarily excused but not discharged, the trial judge shall take appropriate steps to protect alternate jurors from influence, interference or publicity, which might affect that juror's ability to remain impartial and the trial judge may conduct brief voir dire before seating such alternate juror for any trial or deliberations. Such alternate juror may be recalled at any time that a regular juror is unable to serve, including a second phase of any trial that is bifurcated. If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew.

When temporarily excusing an alternate juror, the trial court must instruct that juror "to continue to abide by her obligation to not discuss the case." *Feliciano Chirinos*, 161 Wn. App. at 850; *see*

*also State v. Dye*, 170 Wn. App. 340, 349, 283 P.3d 1130 (2012), *aff'd*, 178 Wn.2d 541 (2013).

Before seating a temporarily excused alternate juror the trial court may, at its discretion, conduct

a hearing to determine whether the alternate juror remains impartial and otherwise fit for service

on the jury. *Dye*, 170 Wn. App. at 349; *Feliciano Chirinos*, 161 Wn. App. at 848-49.

The trial court decided to replace juror 4 with an alternate because juror 4 refused to

deliberate. The alternative possibilities were to have juror 4 arrested or to delay deliberations,

which the trial court considered but rejected as impractical. Because the trial court understood

juror 4's refusal to deliberate as being related to a planned vacation, it was reasonable to

conclude that seeking juror 4's arrest would not allow for deliberations that day. Allowing a

break in deliberations would delay the verdict in a trial that had already lasted a month, but

restarting deliberations would have little effect because the jury had only deliberated "for about

three minutes" at that point. RP at 2786.

However, Miles and Ralls argue that the trial court fully dismissed the alternate jurors at

the conclusion of the trial rather than temporarily excusing them, and therefore did not instruct

them to remain impartial and avoid discussing the case with others. Unfortunately, the record

does not reflect what exactly occurred. The transcript states only that "[t]he Court thanked and

excused the alternates." RP at 2776. The official minutes are similarly terse: "Court thanks,

releases alternate jurors." CP at 860. These are mere summary descriptions from which we

cannot divine what the trial court actually said to the alternate jurors. The record does not reflect

whether the trial court gave any particular instructions or whether it indicated to the alternate

jurors that they might be recalled. On this available record, we are unable to determine whether

the trial court temporarily excused or dismissed the alternate jurors or, if it temporarily excused

16

them, whether it properly instructed them to refrain from discussing the case or issued other instructions protecting them from undue influences.

The appellant bears the burden of providing an adequate record, including a transcription of any portion of the proceedings necessary to determine whether the trial court abused its discretion by failing to give an instruction. *See* RAP 9.2(b); *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012). When faced with an inadequate record, we may decline to review an issue. RAP 9.10; *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999). Here, the appellants have made a good faith effort to provide an adequate record, providing both a transcription of the relevant proceeding and the official minutes, but neither document describes the portion of the proceedings in sufficient detail to permit review. Matters outside of the record are better addressed in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335 n.5, 899 P.2d 1251 (1995).

## IV. JURY QUESTION

Miles and Ralls argue that the trial court erred by answering a question from the jury in a manner that misstated the law and commented on the evidence. We disagree.

A.    Misstatement of Law

We review for an abuse of discretion a trial court's decision to answer a question from the jury. *State v. Becklin*, 163 Wn.2d 519, 530, 182 P.3d 944 (2008). As noted supra, a trial court abuses its discretion when it acts in a manifestly unreasonable manner or bases its decision on untenable grounds. *Robinson*, 193 Wn. App. at 217-18. We review the legal accuracy and sufficiency of the response de novo. *Becklin*, 163 Wn.2d at 525, 530.

The jury sent the trial court the following question during deliberations:

If we determine a defendant is an accomplice, are they Liable for the same crime?
We are having confusion distinguishing between instructions # 3 and # 9.

17

CP at 708. The trial court responded:

> Instruction #3 instructs you that each defendant's charge is to be assessed by you independently and so your verdict on one count as to one defendant should not control your verdict on any other count or as to the other defendant.
>
> Instruction #9 instructs that a person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime. Instruction #9 further defines when a person is an accomplice.

CP at 709. This response departed from the instructions already given to the jury only in that it added that the jury must assess each defendant's charges independently. The second paragraph of the response explained only that under instruction 9 the jury must independently determine whether each defendant was an accomplice.

Miles and Ralls argue that the trial court's response implied to the jury that it need not consider whether each defendant had knowledge that his companions planned to commit the crime. They assert that a reasonable juror could read the court's answer as a "yes" answer, that both defendants may be liable for the same crime. Br. of Appellant (Ralls) at 43. As they point out, such a response would be a misstatement of law because each of the defendants' charges required a separate mens rea and therefore constituted separate crimes. However, a juror could not reasonably read the trial court's measured response as simply answering "yes." The trial court directed the jury to the definition of "accomplice" in instruction 9, which clearly states the mens rea requirement. By instructing the jury that it must independently assess whether each defendant was an accomplice as defined in instruction 9, it accurately stated the applicable law. *See* RCW 9A.08.030; *see also.State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010). The trial court's response was an adequate and proper instruction to the jury.

2.      Judicial Commentary on the Evidence

Miles and Ralls also argue that the trial court's response constituted judicial commentary

on the evidence.  We disagree.

A trial court commits presumptively prejudicial error by commenting on the evidence

before the jury.  *Hermann*, 138 Wn. App. at 606.  Miles and Ralls state that "[t]he jury's question

suggested that consensus had been reached that [they were] an accomplice to *some* crime,"

apparently to argue that the trial court's response solidified this consensus.  Br. of Appellant

(Ralls) at 46 (emphasis omitted) (italics in original).  This is not a fair reading of the jury's

question.  The jury requested clarification as to the meaning of its instructions and did not

suggest that it had decided any issue of fact or developed any particular consensus.  In this

context, the trial court's response cannot be considered commentary on any evidence before the

jury, as it neither discusses nor colors that evidence.  Miles' and Ralls' argument fails.

V.  LFOs

Miles and Ralls argue that the trial court erred by imposing discretionary LFOs as part of

their sentences without first inquiring into their ability to pay those LFOs.  Although neither

defendant objected to the imposition of the LFOs, we exercise our discretion to review the issue

and remand for an individualized determination into their ability to pay them.

At sentencing,

> [t]he court shall not order a defendant to pay costs unless the defendant is or will be able
> to pay them.  In determining the amount and method of payment of costs, the court shall
> take account of the financial resources of the defendant and the nature of the burden that
> payment of costs will impose.

RCW 10.01.160(3).[3] In *Blazina*, our Supreme Court held that under this statute a sentencing court must make an "individualized inquiry into the defendant's current and future ability to pay" on the record before imposing discretionary LFOs. 182 Wn.2d at 837-38.

The court in *Blazina* also reaffirmed that we may, in our discretion, decide not to review a claimed violation of RCW 10.01.160(3) if the defendant failed to object to the imposition of the LFOs below. 182 Wn.2d at 834. In general, we will not review issues the defendant did not raise before the trial court. RAP 2.5(a). However, imposition of discretionary LFOs with neither court inquiry nor defense objection is often appropriate grounds for review. *See State v. Marks*, 185 Wn.2d 143, 145-46, 368 P.3d 485 (2016); *State v. Lyle*, ___ Wn.2d ___, 365 P.3d 1263 (2016); *see also State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011).

Here, the circumstances indicate that both Miles and Ralls may be unable to pay their LFOs. The trial court found both defendants indigent. "Although the ways to establish indigent status remain nonexhaustive . . . if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839. Further, at the time of their release Miles and Ralls would be convicted murderers fresh from serving lengthy prison terms. To say the least, this would put a significant damper on their ability to secure gainful employment. While neither of these factors is dispositive of their ability to pay, both suggest that the defendants face significant impediments warranting further inquiry. Under the circumstances, our review is warranted.

The State argues that even if we review the issue we should not find any violation of RCW 10.01.160(3) because the trial court was aware of Miles' and Ralls' circumstances and "it cannot be said that the trial court had no information before it from which an individualized

---

[3] The statute was amended in 2015. The amendment does not affect the issues in this case.

inquiry could be made." Br. of Resp't at 45. However, the record does not reflect that the trial court performed any such inquiry. Our Supreme Court was quite clear in *Blazina* that the record must show that the sentencing court conducted an individualized inquiry. 182 Wn.2d at 839. We may not assume that the sentencing court conducted the necessary inquiry and found that Miles and Ralls were able to pay the LFOs simply because it was *possible* that it did so.

Because the record shows that the trial court failed to conduct an individualized inquiry into Miles' and Ralls' ability to pay, it erred under *Blazina* by imposing discretionary LFOs at sentencing. Accordingly, we remand for the trial court to individually inquire into Miles' and Ralls' abilities to pay discretionary LFOs consistently with *Blazina*.

## VI. APPELLATE COSTS

Miles and Ralls argue in their supplemental briefs that if the State substantially prevails in this appeal, we should decline to impose appellate costs on them. Under RCW 10.73.160(1),[4] we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612 (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389. Once an order of indigency is issued, that status is presumed to continue through appellate review. RAP 15.2(f).

Miles and Ralls were declared indigent, no evidence has been offered to rebut the presumption of continued indigency, and they will each serve lengthy prison sentences. Under these circumstances, we exercise our discretion to deny appellate costs in the event the State requests them.

---

[4] The statute was amended in 2015. The amendments do not affect the issues in this case.

CONCLUSION

We affirm Miles' and Ralls' convictions but remand for the trial court to individually inquire into Miles' and Ralls' abilities to pay discretionary LFOs consistently with *Blazina*. We also decline to impose appellate costs on either defendant.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Lee, J.