# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JEFFREY ALLEN MCGEE,<br><br>Appellant. | No. 86619-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — The criminal rules confer discretion on trial courts to replace impaneled jurors with alternate jurors when it is necessary to do so. After a juror has been temporarily excused, to properly exercise its discretion as to whether to discharge a seated juror and recall the alternate juror who was temporarily excused, the trial court must provide notice to the parties and an opportunity to be heard. In these unusual circumstances where the trial judge was not apprised that court staff had replaced a seated juror with a temporarily excused alternate, the court erred by failing to provide the requisite notice or determine whether any inquiry was necessary to insure the temporarily excused alternate juror's continued impartiality. We have held such an error to be among "matters which relate directly to a defendant's constitutional right to a fair trial before an impartial jury and to a unanimous verdict." State v. Ashcraft, 71 Wn. App. 444, 463, 859 P.2d 60 (1993). This places the burden on the State to show the error was harmless beyond a reasonable doubt. Because it does not, we reverse and remand.

I

Following a February 2023 incident at a Port Angeles shipyard, the State charged Jeffrey McGee with five offenses: two counts of assault in the third degree, resisting arrest, making a false or misleading statement to a public servant, and theft in the third degree. The case proceeded to a jury trial.

When the parties concluded their closing remarks, it was nearly 4:30 p.m.— the official courthouse closure time—and the court announced that the jury would reconvene and begin its deliberations the next morning. Before excusing the jury, the court informed the jury that, by a random selection process, juror 1 was the alternate. The court explained that juror 1 was excused, but not discharged, and instructed the alternate "not to talk about the case," in the event that it became necessary to recall the alternate juror to deliberate. The court also instructed juror 1 that, in the same manner as the 12 impaneled jurors, she would be "free from the court's instructions and restrictions" once the jury reached its verdict. The court instructed the remaining jurors to report the next morning for deliberations to begin at 9:00 a.m.

The next day, after the court addressed questions posed by the jury, the jury indicated that it had reached verdicts on four counts, but was unable to reach a verdict on one count. The court summoned the jury back to courtroom. Upon observing that the alternate juror was among the jurors who returned to the courtroom, the court excused the jury again. In the ensuing discussion between the court, the bailiff, and counsel, the court learned that after a seated juror, juror

13, called in sick at 8:05 that morning, the bailiff called the alternate, juror 1, and asked her to report back to court. Neither the trial court nor counsel were aware of the substitution at the time it occurred. Like the trial judge, the prosecutor was not aware until the jury entered the courtroom after deliberating. The prosecutor expressed concern about whether the jury had started deliberations before the substitution. According to the bailiff, the jury waited in the lobby until 9:30 a.m., when the alternate arrived and then retired to the jury room together. Defense counsel indicated that he learned that the alternate had been recalled from "other bailiffs" after he noticed the jurors in the lobby "not deliberating" after 9:00 a.m., but counsel was unaware that the trial court judge had not been involved in the process of replacing the seated juror. After making a record of what had occurred, the trial court observed that, had it been informed of the circumstances at the time, it would have discharged juror 13 and recalled juror 1 and proposed continuing:

> [H]ad the court known, my instructions would've been to simply have the jury wait until the alternate arrived. We would've used the alternate and then I would've had them begin deliberations. So, I think what actually happened was appropriate. It happened without our involvement which is something to work on, but I believe the process was the appropriate process that was followed and so I don't see any reason not to continue and bring in the jury.

In response, defense counsel stated, "Agreed."

The jury convicted McGee on three counts: one count of assault, resisting arrest, and making a false and misleading statement to a public servant. The jury acquitted McGee on the theft count and was unable to reach a verdict on the second count of assault. The trial court declared a mistrial as to the second count

3

of assault and the State agreed to dismiss that count with prejudice. The trial court sentenced McGee to a total term of confinement of 14 months.

McGee appeals.

II

The Sixth Amendment to the United States Constitution and Washington Constitution article I, section 22 guarantee the right to a fair trial "by an impartial jury." U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Van Elsoo, 191 Wn. 2d. 798, 807, 425 P.3d 807 (2018). We review claims of constitutional error de novo. State v. Stanley, 120 Wn. App. 312, 314, 85 P.3d 395 (2004).

Criminal Rule 6.5 governs the use of alternate jurors in criminal matters. The rule provides that if a juror is "unable to perform the duties of the court" before "submission of the case to a jury," the court "shall" discharge the juror and draw the name of an alternate. CrR 6.5. The rule further provides that, "after the jury retires to consider its verdict," the court may either discharge or temporarily excuse alternate jurors. Id. When temporarily excusing a juror, the court "shall take appropriate steps to protect alternate jurors from influence, interference or publicity, which might affect that juror's ability to remain impartial." Id. The court may recall a temporarily excused alternate juror "at any time" and, when doing so, the trial court "may conduct brief voir dire before seating an alternate juror for any trial or deliberations." Id. "If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew." Id. Under the

plain language of the rule, the court's discretion whether to voir dire a recalled juror about their continuing impartiality is triggered when they are recalled.

III

McGee argues that replacement of a seated juror with an alternate after the alternate had been temporarily excused, and without notice to the parties, was manifest constitutional error reviewable under RAP 2.5(a) notwithstanding McGee's failure to object to proceeding in the trial court.

The State acknowledges procedural error, noting that the "proper procedure" according to well-settled legal authority interpreting CrR 6.5, "is for the trial court to provide notice to the parties prior to seating an alternate juror." See State v. Chirinos, 161 Wn. App. 844, 849, 255 P.3d 809 (2011) ("The discretion conferred upon the trial court by CrR 6.5, however may be improperly exercised where the trial court does not provide notice to the parties prior to seating an alternate juror."); Stanley, 120 Wn. App. at 318 ("trial court compounded the error by not seeking out the parties through counsel to obtain input before seating the alternate juror"); Ashcraft, 71 Wn. App. at 463 ("Although the decision to replace an initial juror with an alternate juror after deliberations have commenced rests in the sound discretion of the trial court, it does not follow that the parties have no right to notice and an opportunity for input before such discretion is exercised."). However, the State contends that seating an alternate juror before the jury begins its deliberations is an " 'administrative matter,' " and further contends that the failure to adhere to the procedural notice requirement is not an error of

constitutional magnitude. (Quoting State v. Booth, 24 Wn. App. 2d 586, 610, 521 P.3d 196 (2022), review denied, 1 Wn.3d 1006, 526 P.3d 849 (2023).)

Consistent with the State's argument, we have previously permitted the substitution of jurors as an administrative matter during trial. See State v. Turpin, 190 Wn. App. 815, 824-25, 360 P.3d 965 (2015) (replacement of seated juror with alternate juror, off the record, during trial did not violate the defendant's right to a public trial); Booth, 24 Wn. App. 2d at 611 (replacement of seated juror with alternate during trial, without prior notice to the parties, was not a critical stage of the proceeding implicating the defendant's right to counsel or right to be present). In Turpin and Booth, the court replaced seated jurors with alternate jurors during trial. Before a case is submitted to the jury, the trial court is required to discharge a juror who becomes unable to serve. CrR 6.5.

Turpin and Booth are distinguishable. Here, evidence and argument had been completed and the case had been submitted to the jury, though deliberations had not yet begun. Thus, the situation in this case was not governed by the provision of CrR 6.5 covering discharge of a juror before submission of the case to the jury when the juror is unable to perform their duties. Further, unlike the jurors in Turpin and Booth, juror 1 had been temporarily excused. This triggered the requirement of CrR 6.5 that the trial judge "take appropriate steps to protect alternate jurors from influence, interference or publicity" because the juror was temporarily outside the court's direct oversight. This requirement protects the defendant's constitutional "right to a fair trial before an impartial jury and to a

6

unanimous verdict." Ashcraft, 71 Wn. App. at 463. Before a juror who has been temporarily excused is seated for any trial or deliberations, it is within the trial court's discretion under CrR 6.5 whether to conduct a brief voir dire of the juror to ensure they have remained impartial and protected from outside influence. Chiranos, 161 Wn. App. at 849. This discretion "should be exercised only after giving notice to the parties, coupled with an opportunity to be heard." Id. at 849-50. As when a jury has already begun deliberations, notice and the opportunity to provide input when an alternate juror is recalled after a case is submitted to the jury "ensures that the defendant's constitutional right to a trial by an impartial jury is adequately protected." Id.

As we observed in Booth, replacing a seated juror with an alternate during the trial has no potential impact on the defendant's right to an impartial jury, because at that point, the alternate juror has not yet been excused, or even impaneled on the final jury, and the jury selection process adequately protects the defendant's right. Booth, 24 Wn. App. 2d at 610. But CrR 6.5 draws a clear line in providing an opportunity to inquire into an alternate juror's continued impartiality when the court recalls an alternate juror who has been temporarily excused. There is no dispute that the alternate juror was recalled in the unusual circumstances of this case after the evidence and closing arguments had concluded and after the trial court had temporarily excused the alternate juror.

The failure to provide notice and consult the parties before discharging a seated juror and recalling a temporarily excused alternate was an error of constitutional magnitude because it implicated McGee's right to an impartial jury. And the constitutional implications in this case were compounded by the fact that the trial judge, who was unaware of the discharge of one juror and recall of an alternate until after the jury deliberated and reached its verdicts, did not exercise the discretion conferred by CrR 6.5 to determine whether to discharge the seated juror or whether any inquiry of the alternate was necessary. It is uncontroverted that these decisions were made by the court's bailiff.

Because the court failed to adhere to the requirement of notice and consider whether any inquiry of the recalled juror was necessary, the State bears the burden to establish harmless error beyond a reasonable doubt. See Ashcraft, 71 Wn. App. at 466. The State argues it has met this burden because the trial court later indicated that it would have discharged the original juror who called in sick, it appears that no deliberations took place in the absence of juror 1, and defense counsel agreed to continue the proceedings. But the State's arguments do not address the purpose of the notice requirement to protect the impartiality of the jury. And it is not, as the State suggests, McGee's burden to demonstrate that "the jurors that actually deliberated were somehow [partial]." The State provides nothing to demonstrate the recalled juror in fact remained free from outside influence, and, likely as a result of the unusual procedural events, the record does not permit us to discern that the recalled juror remained free from outside influence or that the

8

issue was considered. Thus, the record does not allow us to conclude that the error was harmless beyond a reasonable doubt.

We reverse McGee's convictions and remand.[1]

_Birk, J._

WE CONCUR:

_Díaz, J._          _Hazel, ACJ_

---

[1] Because the failure to provide notice requires reversal in these circumstances, we do not address the additional bases upon which McGee challenges the underlying proceeding or alleged errors related to McGee's sentence.