[No. 4807.   Decided December 11, 1903.]

The State of Washington, *Respondent*, v. Charles Lindgrind, *Appellant*.[1]

Homicide—Manslaughter Excluded by Extradition on Charge of Murder—Instructions Defining Crime.  Where the accused was extradited on the charge of murder, and so could be tried only for that offense, it is not error to refuse an instruction defining the crime of manslaughter and instructing that under the extradition laws he can not be tried therefor, and to aquit if guilty thereof, when the court properly defines murder in the first and second degrees, purposely, deliberation, premeditation, and malice, and instructs the jury to acquit if not guilty of either of the crimes defined, since the object of the requested instruction to obviate confusion between manslaughter and murder was fully met by the explicit instructions given.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered March 9, 1903, upon a trial and conviction of the crime of murder in the second degree.   Affirmed.

*Henry McLean*, for appellant.

*J. C. Waugh* and *M. P. Hurd*, for respondent.

Dunbar, J.—On the night of August 30, 1902, an old man named George Leake, living alone in Skagit county, was most brutally assaulted by some unknown person, and so badly beaten, kicked, and abused, that he died from the effects of such treatment.   The evidence causing suspicion to rest upon the defendant was the dying declaration of Leake.   The defendant left the jurisdiction, but about six weeks afterward was arrested in British Columbia, and was extradited for the crime of murder.   It is conceded by both appellant and respondent that the appellant

[1]Reported in 74 Pac. 565.

could only be tried for the crime for which he was extradited, so that we shall not enter into a discussion of that proposition. At the close of the trial the defendant requested the court to instruct the jury as follows:

"The information in this case charges the defendant with the crime of murder in the first degree. This includes the lesser crimes of murder in the second degree and manslaughter. Under it, if the evidence so warrants, you may find the defendant guilty of murder in the first degree or murder in the second degree, but not of manslaughter. The defendant has been extradited from British Columbia upon the charge of murder, which includes murder in the first degree and second degree as heretofore defined, but does not include manslaughter, and under the extradition law the defendant cannot be tried for the crime of manslaughter. Therefore, if you find from the evidence that the defendant is guilty of manslaughter, it is your duty to aquit .him. Manslaughter is defined to be by our statute as follows: 'Every person who shall unlawfully kill any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, shall be deemed guilty of manslaughter.'"

This instruction the court refused, and to the action of the court in so refusing, the defendant excepted. The contention is earnestly made by the appellant, that the court's refusal to so instruct was prejudicial error; that, inasmuch as the lesser crime of manslaughter is included in the crime of murder, and inasmuch as the jury is ordinarily empowered to find the defendant guilty of manslaughter on an indictment for murder, the jury might have so found in this case if it had been instructed in relation to the definition of manslaughter. No cases bearing on this point have been cited, and, so far as we are advised, the precise question has never arisen.

Ordinarily, of course, it is the duty of the court to instruct on the subject of manslaughter, because under the law it is a material issue in the case for the reason that the defendant may be punished for manslaughter. Hence the necessity of a verdict finding him guilty of manslaughter, if such verdict is justified under the testimony. But in this case it is conceded that a verdict of manslaughter would be equivalent to a verdict of not guilty. Under such a state of facts, the only possible object to be obtained in defining manslaughter would be to prevent the jury from confusing the facts necessary to constitute the crime of manslaughter with the facts necessary to constitute the crime of murder. If the danger of such confusion was obviated by such plain instructions on the law governing the crime charged, and such explicit definitions of such crimes, the object of the law was met, and no further instruction was necessary. It is not enough to say that the jury, if it had been permitted by the instruction offered, might have found for the lesser crime, in its humane reluctance to find a verdict for the higher crime; for this would defeat the ends of justice and the purpose of the law, as it is as much the object of the law to punish the guilty as to protect the innocent. The great consideration is the fairness of the trial to both the state and the accused. The court instructed the jury on the crime charged, and we think the instruction was so explicit that the jury could not fail to comprehend its duties in the premises, and the defendant's rights. After reading the information to the jury, the court said:

"Under this information, if the evidence so warrants, you may find the defendant guilty of murder in the first degree, or guilty of murder in the second degree, or you may find him not guilty. The crimes I have mentioned are defined by our statutes as follows: 'Every person

who shall purposely and in his deliberate and premeditated malice kill another, shall be deemed guilty of murder in the first degree.' I instruct you, gentlemen of the jury, that the law presumes the defendant to be innocent; and in order to convict him of either of the crimes I have mentioned, every fact necessary to constitute such crime must be proved beyond a reasonable doubt, and if the jury entertains any reasonable doubt, on any single fact or element necessary to constitute the crime, it is your duty to give the defendant the benefit of such doubt and acquit him."

These definitions were in the language of the statute, and, if the jury understood the ordinary meaning of ordinary language, it understood the instruction. But the court, out of an abundance of caution, proceeded in instruction No. 5 to define the words of the statute as follows:

"The word 'purposely' defines itself. It simply means an act done with the purpose or intent of doing that act.

"The word 'deliberate' means the mental state or condition of the mind in considering, weighing, and deliberating upon the motive which prompts or induces a certain act or line of action.

" 'Premeditation' is the mental operation of thinking over an act or line of action already decided in the mind before carrying the act or line of action into execution.

" 'Malice' is not confined to ill will towards an individual, but it is also intended to denote an action flowing from any wicked and corrupt motive. A thing done with a wicked mind, and attended with such circumstances as plainly indicate a heart regardless of social duties and fully bent on mischief, indicates malice within the meaning of the law. Malice may be either expressed or implied. Express malice may appear from all the evidence and circumstances of the alleged killing; implied malice may appear where there is no just cause or excuse of the alleged killing."

Then, after further pertinent instructions and a further

plain recital of the facts which were necessary to constitute either murder in the first or second degree, the jury was instructed that, if it was not satisfied beyond a reasonable doubt that the defendant was guilty of either of the crimes defined, it must return a verdict of not guilty. We are satisfied that the jury was in no measure misled by the instructions or want of instructions, that it was properly instructed on the law governing the crime charged, and that no error was committed by the refusal of the court to give the instructions asked.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.