[No. 29727-6-III.    Division Three.    August 16, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ISRAEL MORFIN,
*Appellant*.

2

*Tanesha La Trelle Canzater*, for appellant.

*D. Angus Lee*, *Prosecuting Attorney*, for respondent.

¶1 KORSMO, C.J. — Israel Morfin challenges five convictions on the basis that the trial court improperly retained a juror whom other jurors accused of failing to deliberate. Concluding that the trial court did not abuse its discretion, we affirm.

4

## FACTS

¶2 Mr. Morfin was charged with first and second degree murder, second degree unlawful possession of a firearm, possession with intent to manufacture or deliver marijuana, and attempting to elude police. The case proceeded to a jury trial.

¶3 Approximately four hours into deliberations, the trial court received a note from the presiding juror. It read, "A juror requested—stated that he no longer is interested in voting or the process." Clerk's Papers (CP) at 269. The court considered arguments and suggestions from both sides, and then determined that the best approach would be to reinstruct the jury. The court reread the following instruction to the jury:

> You have received the court's instructions in this case. You know from those instructions that you are to consider all of the instructions, to consider them as a whole, and not place undue emphasis on any particular instruction.
>
> With that obligation in mind, I do want to point out to you two of the instructions regarding your duties from Instruction No. 1. You must apply the law according to these instructions, whether or not you agree with them. And you must consult with one another and deliberate with a view to reaching a verdict. After an impartial consideration of the evidence with the other jurors, each of you must decide the case for yourself.

Report of Proceedings (RP) at 877-78.

¶4 Less than one hour later, the court received a second note from the presiding juror that read, "Juror No. 7 refusing to deliberate." CP at 271. This time, the court decided to interview the presiding juror. Prior to doing so, however, the court placed limitations upon the conversation:

> THE COURT: [Presiding Juror], you sent out a note saying, "Juror #7 refusing to deliberate." I need to ask you a few questions in response to your note.

I need to first advise you of the limitations on what you can say at this time.

PRESIDING JUROR: Okay.

THE COURT: I cannot ask you about and you cannot say anything about your position or opinion on any issue that is presently before the jury. Similarly, I cannot ask you and you cannot say anything about any other juror's position or opinion on any issue that's before the jury, or how the jury stands on any particular issue, such as we're eight to four on this, or we're 11 to one on that. That we cannot get into.

The focus and limits of this conversation is the jury deliberation process and the conduct of jurors in that process, not the content of any deliberations.

Are these limitations fairly clear to you?

PRESIDING JUROR: Yes.

RP at 883-84.

¶5 The court went on to question the presiding juror:

THE COURT: You made a statement, "Juror #7 refusing to deliberate." On what did you base that? . . .

PRESIDING JUROR: As we returned back to the jury room, we were doing some voting, and it was basically voting and then we deliberated on the next phase and he was in his chair like this when we called for a vote.

THE COURT: Just a moment. When — for the record, when [Presiding Juror] said "like this," he leaned back in his chair, crossed his arms over his chest, and dropped his gaze to his lap.

. . . .

PRESIDING JUROR: His eyes were actually closed also.

And when one of the other jurors indicated—I turned to my left, because he was sitting to my left, and saw that he was not responding to the vote, and we asked him if he was going to participate and he says, no, he's made up his mind.

THE COURT: Okay. Did he refuse to vote?

PRESIDING JUROR: He was willing to vote, but then as we were trying to find out where his stance, not on the issue, but on deliberating, he refused to even answer any questions.

THE COURT: Okay. Do I understand correctly, then [Presiding Juror], that when you say he's refusing to deliberate, you mean that he's refusing to speak what's on his mind?

PRESIDING JUROR: Yes. He has said that he will not say anything.

THE COURT: Okay. Has the juror—has juror number 7 refused to consider any issue that the jury is being called upon to consider? Such as by refusing to vote or refusing to—well, I guess it would be refusing to vote on any issue.

PRESIDING JUROR: I believe that he stated he would vote, but he won't talk.

THE COURT: Okay. And the last question, is that a fair summary for his attitude in general, that he will vote, but he will not talk?

PRESIDING JUROR: Yes. We discussed it and we have other jurors that don't feel that it's fair to the defendant.

RP at 884-86.

¶6 The State argued the juror was fit and that no misconduct had occurred; the defense argued that misconduct had occurred and that the juror should be removed. The court declined to remove juror 7 as unfit, reasoning that "at some point in the deliberation process, every member of the jury may say, 'I've heard enough, I've decided the case for myself, I don't have anything else to say.' " RP at 887-88. The court distinguished the situation before it from one in which "[i]f the juror, in addition to refusing to have anything to say were to take the position that [he] did not care about whatever you all say, then the combination of those two things . . . would amount to a refusal to deliberate. And unfitness of the juror." RP at 887-88.

¶7 Upon reconvening, the jury found Mr. Morfin guilty of first and second degree murder, unlawful possession of a firearm, possession of marijuana, and attempting to elude police. He moved for a new trial on the basis that his right to a fair trial was violated when the trial court failed to remove juror 7. The court denied the motion and sentenced Mr. Morfin. He timely appealed to this court.

## ANALYSIS

¶8 The questions presented are whether the trial court erred in declining to remove juror 7 and in denying a new trial based upon that alleged error. Each contention is addressed in turn.

¶9 Dismissal of an unfit juror is statutorily governed:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 2.36.110. The determination of whether or not to dismiss a juror pursuant to this statute is within the discretion of the trial court. *State v. Elmore*, 155 Wn.2d 758, 768-69, 123 P.3d 72 (2005). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997). However, once a jury has begun its deliberation, there are a few "rare case[s]" where a heightened evidentiary standard is applied. *Elmore*, 155 Wn.2d at 778. Those cases occur when a juror is accused of (1) engaging in nullification, (2) refusing to deliberate, or (3) refusing to follow the law. *Id.*

¶10 Under these narrow circumstances, the appropriate evidentiary standard for the trial court to apply is that of "any reasonable possibility." *Id.* This standard requires the trial court to determine whether any allegation is the result of the accused juror's views on the sufficiency of the evidence. *Id.* Where there is "any reasonable possibility" that this is the case, the court may not dismiss the juror without committing a due process violation. *Id.* Once the trial court has applied this standard its determination is reviewed for an abuse of discretion. *Id.* at 781.

¶11 *Elmore* also provided guidance concerning the proper way to proceed after the trial court establishes that the accusation does not relate to a juror's view of the sufficiency of the evidence. When a juror is accused of refusing to deliberate or attempting nullification, the trial court should first attempt to resolve the issue by simply reinstructing the jury. *Id*. at 774. If reinstruction fails to remedy the problem, then any further inquiry should remain as limited in scope as possible so as to protect the secrecy of jury deliberations. *Id*. The inquiry should be balanced and focus upon the conduct of the jurors and the process of deliberations rather than the content of the related discussions. *Id*. The court should stop inquiring once it is satisfied that the accused juror is participating and does not intend to ignore the law or the court's instructions. *Id*.

¶12 In *Elmore*, the trial court received two notes from two different jurors two days into deliberations. *Id*. at 763. The notes both indicated that juror 8 had stated that he had no intention to follow the instructions or the law contained within the instructions, and would not listen to what the other jurors stated. *Id*. The trial court then removed juror 8 as being unfit based solely upon the information contained in the two notes. Defense counsel objected on the grounds that the court's failure to interview the accused juror was erroneous; the prosecutor agreed. *Id*. The court agreed to do so, but emphasized that its decision was final and that the interview was merely to supplement the record. *Id*. at 764. In the interview, the juror denied the allegations and said that his disagreement with the other jurors was over the credibility of witnesses and the merits of the case. The trial court then denied both parties' request to make further determinations or interview other jurors and summarily dismissed juror 8 as unfit. *Id*. at 765.

¶13 On appeal, Division Two of this court held that the trial court improperly intruded into the deliberation process and that the evidence showed that the disagreement

was likely a result of differing viewpoints rather than unfitness. *State v. Elmore*, 121 Wn. App. 747, 752, 90 P.3d 1110 (2004). The court then reversed and remanded for a new trial. *Id*. at 749. The Supreme Court accepted review of the case and affirmed the Court of Appeals. The court adopted the "any reasonable possibility" standard and set out the noted guidelines for a trial court to investigate allegations of mid-deliberation juror misconduct. *Elmore*, 155 Wn.2d at 775-76. Important to the court's holding was the fact that the trial court had departed from its suggested guidelines in several ways: (1) it took immediate action rather than reinstructing and (2) it made its decision to dismiss based solely upon the content of the two notes and testimony from the complaining jurors rather than conducting a rounded investigation. *Id*. at 775. The court also noted that the trial court had not applied the appropriate evidentiary standard. *Id*. at 779.

¶14 Here, Mr. Morfin argues that the facts of *Elmore* are similar to this case, and that the trial court breached its responsibility to investigate the allegation by failing to determine whether there was any reasonable possibility that juror 7's refusal to deliberate stemmed from his view of the sufficiency of the evidence or bias. It is this alleged error upon which he also bases his claim that the trial court erred in denying his motion for a new trial.

¶15 It is worth noting that the verb "deliberate" has not been meaningfully defined by any Washington court.[1] Thus, although helpful in determining whether a trial court abused its discretion, the investigative guidelines iterated in *Elmore* remain somewhat problematic since there is no particular definition or description of what it means to "refuse to deliberate." *See Elmore*, 155 Wn.2d at 774. Consequently, the specific contours related to enforcement of the jury's duty to deliberate are somewhat unclear.

---

[1] There are, of course, several cases defining the adjective "deliberate." *E.g., State v. Lindgrind*, 33 Wash. 440, 443, 74 P. 565 (1903).

■ ¶16 Despite the dearth of applicable case law, sufficient guidance is nonetheless available without resorting to external authority. The *Washington Pattern Jury Instructions (Criminal)* contains the following:

### JURORS' DUTY TO CONSULT WITH ONE ANOTHER

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.04 (3d ed. 2008) (WPIC). This instruction has been cited with approval by the Supreme Court. *State v. Watkins*, 99 Wn.2d 166, 175-76, 660 P.2d 1117 (1983). As the *Watkins* court noted, this instruction also comports with CrR 6.15(f)(2), which provides that " '[a]fter jury deliberations have begun, the trial court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, *or the length of time a jury will be required to deliberate.*' " *Id*. at 175 (emphasis added).

■ ¶17 Taken together, it is apparent that during deliberations a juror must participate by discussing the case with his or her colleagues, listening to others' viewpoints, and formulating his or her own opinion. Notably, there are no requirements as to how much or how long a juror must speak, listen, or deliberate before forming an opinion. The reason for this is simple: any such obligation would violate the secrecy surrounding the deliberation process by requiring trial courts to oversee the deliberations in order to ensure compliance.

■ ■ ¶18 The result in *Elmore* is not helpful to Mr. Morfin because it is factually distinguishable in two crucial

ways. First, in *Elmore* the trial court erred because it *dismissed* a juror after a premature and inadequate investigation, but here the trial court *retained* the juror after satisfying itself that juror 7 had participated in deliberations and would continue to perform his or her duty as required. Second, the trial court in *Elmore* failed to follow the guidelines for investigation of alleged misconduct; here the trial court had the benefit of *Elmore* and followed it. 155 Wn.2d at 779. Had the trial court dismissed the juror, then Mr. Morfin may have had an argument since the trial court did not interview juror 7. *See Elmore*, 155 Wn.2d at 774 (recognizing that the trial court has a duty to perform a balanced inquiry, and that it *may* be necessary to interview the complaining juror or jurors, the accused juror, and all or some of the other members of the jury). However, since the trial court found the complaint lacked merit, Mr. Morfin's argument that the court should have conducted a more intrusive investigation is contrary to *Elmore*. *See id.* ("The court's inquiry should cease if the trial judge becomes satisfied that the juror in question is participating in deliberations and does not intend to ignore the law or the court's instructions.").

¶19 Although Mr. Morfin correctly points out that the record is silent as to whether the trial court expressly applied *Elmore*'s heightened evidentiary requirement, we doubt its applicability in this case since the court did not dismiss juror 7. The plain purpose of the "any reasonable possibility" standard adopted in *Elmore* is to ensure the trial court's certainty that a *dismissal* does not stem from a juror's views as to the sufficiency of the evidence. *Id.* at 781. Consequently, we read *Elmore* to state that prejudice occurs only where a court dismisses a juror without applying the appropriate evidentiary standard. *Id.* at 780. Since the trial court retained juror 7, Mr. Morfin's argument that he was prejudiced is unpersuasive.

¶20 His argument that the court had a duty to investigate for bias also fails because *Elmore* imposed no such duty.

As discussed above, that case stands for the proposition that where a juror is accused mid-deliberation of nullification, refusing to deliberate, or refusing to follow the law, a heightened evidentiary standard applies and the trial court must investigate in a minimally intrusive fashion. *Id.* at 781. Although the trial court does have a duty to remove a juror that it feels is unfit due to bias, nowhere in either *Elmore* or this case was bias at issue. As such, this argument is simply unsupported. Thus, the only question remaining is whether the trial court abused its discretion in retaining juror 7 after finding that he had deliberated and had merely finished earlier than his colleagues had.

¶21 The record before this court shows that the trial court's decision was grounded upon a tenable basis. The jury in this case was given an instruction based upon WPIC 1.04, quoted above, and it is presumed that jurors follow instructions. *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). As discussed above, neither that instruction nor CrR 6.15(f)(2) state either a specific period of time a juror must deliberate with his or her fellow jurors nor a particular method of involvement. Mr. Morfin himself fails to either allege that there is any particular requirement or cite any authority that would suggest as much.

¶22 Critically, nothing in the record suggests that juror 7 had failed to discuss the case with his colleagues, listen to others' viewpoints, and formulate his own opinion in the time prior to the first note. This fact strongly suggests, as the trial court found, that the accused juror had engaged in the deliberation process and had simply come to his own honestly held conviction in advance of his colleagues. Consequently, the court did not abuse its discretion in concluding that the juror had participated in deliberations and was following the law as instructed.[2]

---

[2] This outcome is necessitated by due process considerations. It need hardly be stated that each member of a jury will behave and interact differently, that each jury will have a different dynamic, and that each juror will reach his or her own conclusion at differing times during the deliberation process. Thus, if a particular

¶23 Mr. Morfin's remaining argument that the trial court erred in denying his motion for a new trial also is without merit. This court reviews a trial court's denial of a motion for a new trial for an abuse of discretion. *State v. Burke*, 163 Wn.2d 204, 210, 181 P.3d 1 (2008). As discussed above, a trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. *Brown*, 132 Wn.2d at 572. Here, the trial court did not err in retaining the accused juror. As such, the court had a tenable basis for denying the motion based upon its retention of juror 7.

¶24 We commend the trial court's efforts to adhere to the standards set forth in *Elmore* and find no error in its judgment.

¶25 Affirmed.

SWEENEY and KULIK, JJ., concur.

Review denied at 176 Wn.2d 1025 (2013).

---

type of involvement or a particular amount of vocal participation was required, a competent juror could potentially be forced to interact in a manner in which she or he feels uncomfortable. Such interaction could potentially subject an uncomfortable juror to capitulate to peer pressure, thereby depriving the parties of a fair trial.