
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75975-2-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JEREMY BLAKELY, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: May 14, 2018 |

SPEARMAN, J. — When an alternate juror is seated, the trial court must instruct the reconstituted jury to begin deliberations anew. This instruction serves to protect the defendant's right to a unanimous jury verdict. The trial court in this case seated an alternate juror and failed to instruct the reconstituted jury, an error of constitutional magnitude. The record, however, is sufficient for the State to meet its burden of proving beyond a reasonable doubt that the error was harmless. We affirm.

## FACTS

Following an altercation, Blakely fatally shot Richard Napier. The State charged Blakely with murder in the first degree, assault in the first degree, and unlawful possession of a firearm. Blakely's theory was that he acted in self-defense.

The parties presented evidence at a lengthy trial. On the last day, September 8, the court instructed the jury as to deliberations and reaching a unanimous verdict.[1] The parties then presented closing arguments. Closing arguments concluded at 3:47 p.m. The trial court addressed the 14 jurors, thanked them for their diligence, and chose the two alternates. The court instructed the alternates to maintain the prohibition on discussing the case and stated that, in the event one or both of them was called in, the jury would recommence deliberations:

> I have to burden you, however, with observing the same restrictions you've been observing throughout the trial. . . And the reason for that is if someone becomes ill or has a family emergency on the rest of the panel before the jury is able to reach a verdict on all the questions before the jury, then we will be calling you in. . . and requesting you to deliberate as part of the jury and have the jury with one or both of you start the deliberations all over again.

Verbatim Report of Proceedings (VRP) at 1742. Addressing the rest of the jurors, the court continued:

> The rest of you, ladies and gentlemen, will be the jurors who are deliberating in this case. So, let me say a word or two about deliberations. We not only are allowing you to talk about the case now, we are strongly encouraging you all to talk about the case. . . It's now about ten minutes to 4:00, so you probably won't get too much done today because we're going to ask you to suspend your deliberations at 4:00 and then come back tomorrow morning and resume your deliberations.

Id. at 1742-43. The court instructed the jurors that their discussions about the case should take place only in the jury room when all 12 jurors were present. "So, again," the court stated, "if somebody needs to take a bathroom break or

---

[1] Blakely does not challenge these instructions.

something like that, perfectly fine, but please stop talking about the case until that person is able to rejoin you." Id. at 1743. The court dismissed the jurors to the jury room at 3:53 p.m. The court instructed the alternates to accompany the jury in order to receive their certificates. The jury was dismissed for the day at 4:00 p.m.

The next morning, before beginning deliberations, one of the 12 jurors informed the bailiff that she had a family emergency and needed to leave. According to the clerk's minutes, an alternate arrived at 10:15 a.m. and the jury began deliberations anew. The reconstituted jury deliberated for about five hours. At 3:38 pm, the jury found Blakely guilty of second degree felony murder and unlawful possession of a firearm. The court polled each juror, asking whether the verdicts reflected their individual decision and the decision of the unanimous jury. Each juror answered in the affirmative.

A week later, the State requested a declaration from the bailiff to determine whether the jury followed constitutionally required procedure when seating the alternate juror. The State noted that the court did not instruct the reconstituted jury on the record that it needed to disregard all previous deliberations and begin the deliberative process anew. The State asserted that failure to so instruct the jury is an error of constitutional magnitude. The State argued, however, that it may be able to prove that the error was harmless in this case. The State attached a declaration from the presiding juror.

In the declaration, the presiding juror stated that, on the first day of deliberations, the 12 jurors were alone in the jury room for three to five minutes.

3

The next day, the bailiff told the remaining 11 jurors not to begin deliberations until the alternate arrived and to disregard anything they had discussed the previous day. The presiding juror declared that, after the alternate arrived, "we started deliberations totally over again from scratch and disregarded everything we had previously discussed." Clerk's Papers (CP) at 122.

The parties questioned the bailiff at a hearing on October 6. The bailiff testified that, when the jury was released on September 8, she accompanied all 14 jurors to the jury room. She provided the entire group with information about how to contact her and what to do if they had a question. The bailiff told the 12 jurors that they would not receive the exhibits that evening, instructed them to select a presiding juror, and stated that she would be back to dismiss them for the day in a few minutes. The bailiff walked the two alternates out and then returned to dismiss the 12 jurors. She stated that the jurors were alone in the room for at most five minutes. On cross examination, the bailiff stated that she did not know what the jurors discussed during those few minutes and "[t]hey certainly could have" discussed the case. VRP at 1779.

The morning of September 9, according to the bailiff, the 12 jurors gathered in the hallway as instructed. One of the jurors informed the bailiff that she had a family emergency and had to leave. The bailiff stated that she immediately informed the judge, contacted the first alternate, and emailed counsel. The bailiff advised the remaining 11 jurors not to discuss the case. She testified that, when the alternate arrived, she told the jurors to begin anew:

> Right around 10:30 is when the alternate juror arrived and then I informed them, once the alternate juror was ushered into the jury room, that they could now start talking about the case and if there was anything that they needed to do from scratch, they needed to start it all over again. So, if they needed to select the presiding juror again, now that the alternate was there, they would need to do that again as well.

VRP at 1774.

On October 28, the same day that it entered its judgment and sentence, the court entered findings of fact and conclusions of law concerning the alternate juror. The court found the bailiff's testimony and the juror's declaration credible. Based on this evidence, the record of proceedings, and the clerk's minutes, the court found "beyond a reasonable doubt that the replacement of an original juror with an alternate juror did not infringe upon the defendant's right to a unanimous jury verdict and that the defendant's right to a unanimous jury verdict has been preserved." CP at 83.

## DISCUSSION

Blakely contends the court's failure to instruct the reconstituted jury violated his constitutional right to a unanimous verdict. We review claims of constitutional error de novo. State v. Stanley, 120 Wn. App. 312, 314, 85 P.3d 395 (2004) (citing State v. Pirtle, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995)).

The Washington Constitution guarantees criminal defendants the right to a unanimous verdict. State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014) (citing CONST. art. I §§ 21, 22). Jury unanimity is only achieved when the verdict is reached through consensus, based on "'deliberations which are the common experience of all. . . .'" Id. at 585 (quoting People v. Collins, 17 Cal.3d 687, 693,

5

552 P.2d 742 (1976)). While each juror must participate, "there are no requirements as to how much or how long a juror must speak, listen, or deliberate before forming an opinion." State v. Morfin, 171 Wn. App. 1, 10, 287 P.3d 600 (2012).

To assure jury unanimity when an alternate juror is seated, CrR 6.5 provides that "[i]f the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew." We have consistently held that a trial court commits reversible error of constitutional magnitude when it fails to instruct the reconstituted jury, on the record, to disregard all prior deliberations and begin deliberations anew. State v. Blancaflor, 183 Wn. App. 215, 222, 334 P.3d 46 (2014); State v. Chirinos, 161 Wn. App. 844, 848, 255 P.3d 809 (2011); Stanley, 120 Wn. App. at 315-16; State v. Ashcraft, 71 Wn. App. 444, 464, 859 P.2d 60 (1993). The error is presumed to be prejudicial. Ashcraft, 71 Wn. App. at 465. The State may overcome the presumption by proving beyond a reasonable doubt that the error was harmless. Id.

In this case, the parties dispute whether the jurors began deliberations in the few minutes they were alone in the jury room on September 8. Blakely argues that the trial court dismissed the jurors to begin deliberations and we must presume they followed this instruction.

The State argues that the jurors did not begin deliberations on September 8. The State asserts that we may draw this inference based on the short time the jurors were alone in the jury room, the fact that they did not receive exhibits, and

the bailiff's instruction that they select a presiding juror. The State's position is that, because no deliberations occurred on September 8, no instruction was necessary on September 9 to preserve jury unanimity.

We agree with Blakely. Absent evidence to the contrary, "we presume that the jury, as originally constituted, followed the court's instructions to begin deliberations after retiring to the jury room." Blancaflor, 183 Wn. App. at 226 (citing Lamar, 180 Wn.2d at 586). The trial court dismissed the jurors on September 8 with the instruction to "talk about the case," "suspend [their] deliberations at 4:00," and "resume [their] deliberations" the next morning. VRP at 1742-43. We presume the jury followed these instructions.

The record supports this presumption. The bailiff testified that she told the jurors they would not receive the exhibits that day and they should select a presiding juror. She also stated that she did not know what the jurors discussed while they were alone in the jury room and they "certainly could have" discussed the case. VRP at 1779. The presiding juror stated that, when the alternate juror was seated on September 9, the jurors "disregarded everything [they] had previously discussed," indicating that they discussed the case on September 8.[2] CP at 122.

We conclude that the jury followed the court's instructions and began deliberations on September 8. The trial court erred in failing to instruct the

---

[2] The State asserts that any discussion as to who would be presiding juror is not part of the jury's deliberations. Because there is no evidence that the jury's discussion on September 8 was limited to selecting a presiding juror, we do not reach the issue.

reconstituted jury as required by CrR 6.5. The failure to instruct the reconstituted jury to disregard prior deliberations and begin anew is reversible error of constitutional magnitude. Ashcraft, 71 Wn. App. at 464. See also Blancaflor, 183 Wn. App. at 222; Chirinos, 161 Wn. App. at 848; Stanley, 120 Wn. App. at 315-16.

The State argues that the lack of instruction was only a rule violation, not an error of constitutional magnitude. Noting that the Supreme Court has never ruled on this issue, the State urges us not to follow the Ashcraft line of cases as wrongly decided.[3] The State contends that where, as here, the jury as a whole was properly instructed as to unanimity before deliberations, the defendant has the burden to show that constitutional error occurred and resulted in actual prejudice. The State points to no authority holding that an instruction given before the jury begins deliberations protects the right to unanimity when an alternate is later seated.

We reject the State's argument. Defendants have a constitutional right to a unanimous verdict. Lamar, 180 Wn.2d at 583. Because we may not "intrude into the jury deliberations to determine what the jury has decided or why," we must presume the jury follows instructions. Id. at 587 (citing State v. Elmore, 155 Wn.2d 758, 770-71, 123 P.3d 72 (2005)). Instructing the reconstituted jury serves

---

[3] In Lamar, the trial court failed to give a CrR 6.5 instruction and erroneously instructed the jury to bring the alternate juror "up to speed." Lamar, 180 Wn.2d at 580-81. We held that the lack of instruction was constitutional error. Id. at 581. The Supreme Court affirmed but under a different analysis. Id. at 579. Because the erroneous instruction was constitutional error, the Lamar court did not address whether the lack of CrR 6.5 instruction was constitutional error. Id. at 586-87.

to assure "that the verdict rendered has been based upon the consensus of the 12 jurors who rendered the final verdict, based upon the common experience of all of them." Ashcraft, 71 Wn. App. at 466 (citing State v. Fisch, 22 Wn. App. 381, 383, 588 P.2d 1389 (1979)). Absent a proper instruction to the reconstituted jury, we may not presume that unanimity has been preserved. As this court has repeatedly stated, the lack of instruction to the reconstituted jury was constitutional error. The State has the burden to prove beyond a reasonable doubt that the error was harmless. Id. at 465.

The State contends the error was harmless because the poll of the jury and the record as a whole clearly demonstrate that the verdict was unanimous. When properly carried out, polling a jury is evidence of jury unanimity. Lamar, 180 Wn.2d at 587. Polling is not sufficient to establish unanimity, however, where "the record affirmatively shows a reason to seriously doubt that the right has been safeguarded." Id. at 587-88 (citing State v. Badda, 63 Wn.2d 176, 182-83, 385 P.2d 859 (1963)).

In this case, the trial court properly polled the jury. Each juror affirmed that the verdict was his or her individual decision and that of the unanimous group. The polling is evidence that the verdict was unanimous.

The record supports this evidence. The jury received a proper unanimity instruction before deliberations began. The trial court informed the alternates that, if either of them should be needed, the jury would "start the deliberations all over again." Id. at 1742. When the alternate was seated on September 9, the bailiff instructed the jurors to begin deliberations anew. The presiding juror

declared that the jury followed this instruction: "[a]fter the alternate juror joined the rest of us on September 9, 2016, making us twelve jurors again, we started deliberations totally over again from scratch and disregarded everything we had previously discussed."[4] CP at 122. Considering the polling of the jury and the record as a whole, we conclude the State has met its burden of proving beyond a reasonable doubt that the error was harmless.

Affirmed.

WE CONCUR:

Spearman, J.

Trickey, J.

Becker, J.

---

[4] Blakely challenges the admissibility of the presiding juror's declaration. He objects to the declaration as hearsay and an impermissible intrusion into the jury deliberation process. Because Blakely did not object to the declaration below, he waived any objection to the evidence on appeal. State v. Perez-Cervantes, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000). See also State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) (evidentiary challenge only preserved if party challenged the evidence below on the same grounds raised on appeal).