**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

               Respondent,

        v.

LONNIE WILLIAM JONES,

               Appellant.

DIVISION ONE

No. 84495-4-I

UNPUBLISHED OPINION

DWYER, J. — Lonnie Jones appeals from the judgment entered on the jury verdict finding him guilty of assault in the second degree. Jones claims that the trial court erred by not sua sponte removing a biased juror and that his counsel was ineffective for failing to challenge the juror for cause. Jones also contends that the victim penalty assessment (VPA) should be stricken from his judgment and sentence, an issue which the State concedes. We remand for the trial court to strike the VPA from Jones' judgment and sentence but otherwise affirm.

I

On October 23, 2021, Lonnie Jones struck Jacob Johnson in the head multiple times with a hammer while Johnson was asleep in his friend's apartment. Jones was charged with assault in the second degree. Jones was also charged with the aggravating factors of being armed with a deadly weapon and rapid recidivism.

During voir dire, the trial court informed the prospective jurors that Jones was charged with assault in the second degree and that he was "accused of being armed with a deadly weapon, that is, a hammer, and the crime involves the aggravating factor that Mr. Jones committed the offense shortly after being released from incarceration."

Prior to voir dire, prospective jurors were required to complete questionnaires, which asked, among other things, whether jurors had any reservations about their ability to be impartial during the proceedings. During voir dire, the State followed up with those jurors who answered that they had reservations about their ability to be impartial. When questioned about why she answered on the questionnaire that she had reservations, Juror 76 explained:

> I live in an area where there's fairly high crime rates and property crimes, and uhm, you know, have worked downtown for a number of years and it's just this sort of feeling of increasing frustration with the amount of crime and repeat offenders who have, uhm, you know, it seems like the justice system is not working, and they keep ending up on the streets and victimizing people. So, uhm, you know, so—so that feeling of, you know, real frustration with the system, uhm, is kind of—is prevalent, I guess, in my thinking.

The State then asked Juror 76 why she had indicated on her questionnaire that she might not be able to follow the law. The juror answered "that's based upon that—that same thing. You know, if it seemed like, you know, justice wasn't gonna prevail, I—I would struggle with that." The State followed up by asking Juror 76:

> So, let's say that Judge Sutton gives you the law in this case and tells you that this is the law you have to follow, and there's some piece of it you disagree with, maybe not even a big piece, but there's something that you disagree with. Do you think that you

2

would be able to put aside your personal feelings and your own experiences and follow what Judge Sutton tells you to do, even if you don't agree with it or the outcome?

Juror 76 responded, "I think I would try, but you know, given—depending on what it is, uh, I guess I would struggle." Neither party asked any further questions of Juror 76 and neither party asserted a for-cause challenge.

Juror 76 was not the only person to express reservations about their ability to remain impartial. Juror 66 similarly indicated:

But I feel like if there are, uhm—if there is sufficient evidence showing the—the person assaulted another person, I will have a very strong opinion, uhm, believing that the person is guilty. It's just—but obviously, I will try to do my best and be, uhm, unbiased, but if there is a solid evidence.

This juror was also not challenged for cause.

Jones used all six of his peremptory challenges, the final one on Juror 66. Juror 76 was the last member of the jury to be seated.

The jury found Jones guilty of assault in the second degree. It could not reach a unanimous verdict on either aggravating factor. Jones was sentenced to 84 months of imprisonment followed by 18 months of community custody. As part of the judgment and sentence, the trial court imposed the then-mandatory $500 VPA.

Jones appeals.

II

Jones contends that the trial court erred by failing to, sua sponte, excuse Juror 76 for cause because the juror expressed actual bias during voir dire. We disagree.

Under RAP 2.5(a)(3), a party may raise for the first time on appeal a "manifest error affecting a constitutional right." An error is manifest if it actually affected the defendant's rights at trial. State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Seating of a biased juror implicates the defendant's constitutional right to a fair and impartial jury. In re Pers. Restraint of Yates, 177 Wn.2d 1, 30, 296 P.3d 872 (2013). "The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of prejudice. Thus, if the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error." State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015) (citation omitted) (citing United States v. Gonzalez, 214 F.3d 1109, 1111 (9th Cir. 2000)).

Whether a juror has demonstrated actual bias is a determination that falls within the discretion of the trial court. State v. Morfin, 171 Wn. App. 1, 7, 287 P.3d 600 (2012). Accordingly, we review a trial court's decision regarding whether to excuse a juror for an abuse of discretion. State v. Elmore, 155 Wn.2d 758, 768-69, 123 P.3d 72 (2005); State v. Rupe, 108 Wn.2d 734, 748, 743 P.2d 210 (1987). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

"While a trial court may have a duty to sua sponte intercede where actual bias is evident or where the defendant is not represented by counsel, this duty must also be balanced with the defendant's right to be represented by competent

4

counsel." State v. Phillips, 6 Wn. App. 2d 651, 667, 431 P.3d 1056 (2018).  A trial court must therefore exercise caution before injecting itself into the jury selection process, because the decision to select or dismiss a juror is often "based on the trial counsel's experience, intuition, strategy, and discretion." State v. Lawler, 194 Wn. App. 275, 285, 374 P.3d 278 (2016).

Jones contends that the following comments by Juror 76 demonstrated her actual bias and required that she be dismissed:

> [PROSECUTOR]:  I think that you were also a little worried about whether you could be impartial.  Can you tell me about that?
> JUROR NO. 76: Yeah.  It's—it's in my case more general.  I live in an area where there's fairly high crime rates and property crimes, and uhm, you know, have worked downtown for a number of years and it's just this sort of feeling of increasing frustration with the amount of crime and repeat offenders who have, uhm, you know, it seems like the justice system is not working, and they keep ending up on the streets and victimizing people.  So, uhm, you know, so—so that feeling of, you know, real frustration with the system, uhm, is kind of—is prevalent, I guess, in my thinking.
> [PROSECUTOR]: Yeah.  Thank you, Juror 76.  I appreciate that.  I think you were also concerned that you might not be able to follow the law that the Judge gives you in this case.  Is that based on the same thing that you were just talking about, or is that something different?
> JUROR NO. 76: Uhm, that's based upon that—that same thing.  You know, if it seemed like, you know, justice wasn't gonna prevail, I—I would struggle with that.  Uhm—
> [PROSECUTOR]: Yeah.  So, let's say that Judge Sutton gives you the law in this case and tells you that this is the law you have to follow, and there's some piece of it you disagree with, maybe not even a big piece, but there's something that you disagree with.  Do you think that you would be able to put aside your personal feelings and your own experiences and follow what Judge Sutton tells you to do, even if you don't agree with it or the outcome?
> JUROR NO. 76: I think I would try, but you know, given— depending on what it is, uh, I guess I would struggle.
> [PROSECUTOR]: Okay.
> JUROR NO. 76: I would say.

Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). "Equivocal answers alone are not sufficient to establish actual bias warranting dismissal of a potential juror." State v. Sassen Van Elsloo, 191 Wn.2d 798, 808-09, 425 P.3d 807 (2018) (citing State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)). Rather, the issue is whether a juror with preconceived notions cannot set them aside. Sassan Van Elsloo, 191 Wn.2d at 809.

In Irby, this court examined whether the statements made by two jurors demonstrated actual bias such that the trial court should have removed them from the jury sua sponte. 187 Wn. App. at 192. The first, Juror 38, responded to the trial court's question about whether her employment with Child Protective Services would affect her ability to be impartial by saying "I would like to say he's guilty." Irby, 187 Wn. App. at 190. The second, Juror 27, expressed that she was more inclined to believe the testimony of law enforcement, but when asked whether she could set that aside and decide the case based on the evidence presented, stated that "I think it will be hard for me" and "I will try, but it does cause me some concern." Irby, 187 Wn. App. at 191.

This court held that the record demonstrated that Juror 38 exhibited actual bias because her statement that "I would like to say he's guilty," constituted an unqualified statement that she did not think she could be fair and no attempts were made to assure that she could be fair despite her predisposition. Irby, 187

6

Wn. App. at 196.  We rejected the State's argument that impartiality could be implied from Juror 38's failure to respond to the question posed to the entire venire "Does everybody here think that they can basically make a finding of guilty or not guilty based on the evidence that you hear?", noting that general questions posed to a group are not a substitute for individual questioning after a juror expresses bias.  Irby, 187 Wn. App. at 196.

On the other hand, we held that Juror 27 did not exhibit actual bias when she stated that she had a predisposition to believe law enforcement, but that she "will try" to set that predisposition aside even if "I think it will be hard for me." Irby, 187 Wn. App. at 196.  Rather, we determined that it was "within the court's discretion to view juror 27's answers as an adequate assurance of impartiality." Irby, 187 Wn. App. at 196.

Similarly, in Lawler, Division Two of this court held that the trial court did not err by failing to dismiss a juror sua sponte who stated that he had multiple family members who were victims of domestic violence and, when asked whether he could set aside his personal experiences, stated "Honestly, I think that would be a pain in the neck, you know.  I don't think I would be able to do that with all these experiences."  194 Wn. App. at 279-80.  The reasons for so holding were fourfold.  First, the court emphasized that the trial court is in the best position to evaluate whether a juror should be dismissed as the trial court is able to observe the prospective juror and others in the courtroom.  Lawler, 194 Wn. App. at 287. Second, the court noted that the juror's answers were equivocal and "convey[ed] a vague, nonspecific discomfort with the case rather than a firm bias."  Lawler,

7

194 Wn. App. at 287. Third, the record demonstrated that the trial court was alert to the possibility of biased jurors and dismissed two such prospective jurors sua sponte. Lawler, 194 Wn. App. at 287-88. Fourth, the record demonstrated that defense counsel was also alert to the possibility of biased jurors, challenging two jurors for cause. Lawler, 194 Wn. App. at 288. Also notable to the appellate court was the fact that defense counsel chose not to ask any questions of the juror at issue, "suggest[ing] that defense counsel observed something during voir dire that led him to believe that juror 23 could be a fair juror." Lawler, 194 Wn. App. at 288.

Here, although Juror 76 expressed concern about the justice system not adequately addressing recidivism, she ultimately stated that she "would try" to put aside her personal feelings and follow the law as instructed. This equivocal statement is more reassuring of impartiality than was the statement made by the juror in Lawler and equally as reassuring as the answers given by Juror 27 in Irby. The record also demonstrates that both the trial court and defense counsel herein were alert to the possibility of biased jurors. Defense counsel asserted one for cause challenge to a juror who was very concerned about her ability to be fair in light of her experience with the attempted murder-for-hire of her sister.[1] The trial court granted the motion and excused that juror for cause. The trial court also acted sua sponte in excusing a juror who questioned the juror's own ability to concentrate on account of a mental health crisis. Finally, we emphasize

---

[1] The State asserted two for-cause challenges, one to Juror 35 and one to Juror 97. The trial court denied the motion as to Juror 35 after asking additional questions of the juror. The trial court granted the motion as to Juror 97 because the juror knew information specific to the case.

8

that the trial court was able to observe Juror 76 during voir dire and thus was in the best position to be able to judge whether the prospective juror was expressing bias or merely acknowledging difficulty in setting aside her personal experiences.

"When the juror has expressed reservations but agrees they can set those aside to be fair and impartial, it is within the trial court's discretion to allow that juror to remain." Phillips, 6 Wn. App. 2d at 666. Accordingly, the trial court did not abuse its discretion by not sua sponte removing Juror 76 for cause.

III

Jones additionally contends that his counsel was ineffective for not asserting a for-cause challenge against Juror 76. We disagree.

In order to succeed on an ineffective assistance of counsel claim, a defendant must show that (1) the defense attorney's performance was deficient and (2) the defendant was prejudiced by that deficient performance. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015) (quoting State v. Borsheim, 140 Wn. App. 357, 376, 165 P.3d 417 (2007)). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). We presume adequate representation when there is any "'conceivable legitimate tactic'" that explains counsel's performance. Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). "Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different." Weaville, 162 Wn.

App. at 823 (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). "Competency of counsel is determined based upon the entire record below." McFarland, 127 Wn.2d at 335 (citing State v. White, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972)).

Jones asserts that there is no legitimate strategic reason not to challenge a biased juror for cause. As we held in section II, supra, Jones has not demonstrated that Juror 76 exhibited any actual bias. Where a juror has expressed only a *possible* bias, trial counsel may have legitimate, tactical reasons not to challenge the juror, based on counsel's experience, strategy, and judgment. Lawler, 194 Wn. App. at 285.

Here, defense counsel heard the answers given by Juror 76 during the State's portion of voir dire and chose not to ask any more questions of Juror 76. Instead, defense counsel decided to use Juror 76's answers as a springboard to question other jurors about their possible biases against repeat offenders. Defense counsel's first question to the jury venire was "Juror 76 indicated that—that she has a real frustration with the system. Do any of the other jurors have that same feeling?" Four other jurors answered that they had concerns about the system's failure to address recidivism. It thus appears that defense counsel's decision not to move to strike Juror 76 was a legitimate tactical decision aimed at finding other jurors who might have a predisposition against someone charged with a rapid recidivism enhancement.

In arguing to the contrary, Jones relies heavily upon Hughes v. United States, 258 F.3d 453 (6th Cir. 2001). In that case, the defendant was charged

10

with stealing a firearm from a federal marshal.  Hughes, 258 F.3d at 455.  During introductory questioning, one of the prospective jurors expressed that she was "quite close" to a number of police officers and when asked whether those relationships would prevent her from being fair, she replied, "I don't think I could be fair."  Hughes, 258 F.3d at 456.  No one asked any follow up questions of the juror.  Hughes, 258 F.3d at 456.

The Sixth Circuit Federal Court of Appeals held that "[g]iven [the juror]'s express admission of bias, with no subsequent assurance of impartiality and no rehabilitation by counsel or the court by way of clarification through follow-up questions directed to the potential juror, we find [the juror] to have been actually biased in this case."  Hughes, 258 F.3d at 460.  The court noted that

> Although the precedent of the Supreme Court and this Court makes us circumspect about finding actual juror bias, such precedent does not prevent us from examining the compelling circumstances presented by the facts of this case-where both the district court and counsel failed to conduct the most rudimentary inquiry of the potential juror to inquire further into her statement that she could not be fair.

Hughes, 258 F.3d at 458-59.  The court further held that defense counsel's *complete* failure to follow up on the juror's admission of bias constituted ineffective assistance of counsel entitling the defendant to a new trial.  Hughes, 258 F.3d at 462-63.

Hughes is factually anomalous and does not support Jones's argument.[2]  This is not a case in which the juror expressed bias and no follow up was

---

[2] We note that Hughes, a federal circuit court case, is not binding upon this court.  W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters, 180 Wn.2d 54, 62, 322 P.3d 1207 (2014) (quoting Home Ins. Co. of N.Y. v. N. Pac. Ry., 18 Wn.2d 798, 808, 140 P.2d 507 (1943)).

conducted.  Here, Juror 76 indicated on her juror questionnaire that she had concerns about her ability to be impartial.  The State asked Juror 76 about the nature of her concern and then asked multiple rehabilitational questions about whether she could follow the instructions given to her by the trial court.  In response to those questions, Juror 76 indicated that she would try to set aside her personal feelings and follow the court's instructions.  Defense counsel did not ignore Juror 76's statements, but instead used them to determine whether other prospective jurors held similar feelings that might be detrimental to Jones.  Thus, unlike the defense counsel in Hughes, defense counsel here did not completely and totally fail to take action on an actually biased juror.

Finally, simple reality has a place in the law.  Here, defense counsel likely well knew that a challenge to Juror 76 for cause would be unsuccessful.  At a minimum, a lack of success in such a challenge was within the range of reasonably foreseeable outcomes.  Because all of the defendant's peremptory challenges were exercised against other potential jurors, it is perfectly conceivable that a competent attorney would forego the challenge for cause, thus eliminating the possibility of having seated on the jury a juror who might feel insulted or slighted by counsel's actions in seeking to challenge the juror—an action, the juror would know, that was unwarranted under the law by virtue of the trial judge's ruling rejecting the for-cause challenge.  It cannot be said that *no reasonable* trial lawyer would seek to avoid such an eventuality.  For this reason, also, deficient performance is not established.

Because Juror 76 was not actually biased and defense counsel had conceivable, legitimate tactical reasons for not challenging the juror for cause, Jones has not established that his counsel was ineffective. Accordingly, we affirm his conviction.

IV

Finally, Jones asserts that the victim penalty assessment (VPA) should be stricken from his judgment and sentence pursuant to RCW 7.68.035 because the trial court found him to be indigent. The State agrees that RCW 7.68.035 applies and concedes error as to the imposition of the VPA. The amended version of RCW 7.68.035 applies to cases on direct appeal. See State v. Ellis, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023); see also State v. Wheeler, No. 83329-4-I, slip op. at 22 (Wash. Ct. App. Aug. 7, 2023) (unpublished), https://www.courts.wa.gov/opinions /pdf/833294.pdf.[3] We remand for the trial court to strike the VPA from Jones's judgment and sentence.

_Dwyer, J._

---

[3] Pursuant to GR 14.1(c), we may cite to unpublished cases as "necessary for a reasoned decision." We adopt the expanded reasoning set out in Wheeler as to the application of this statutory amendment to cases on direct appeal.

13

WE CONCUR:

Díaz, J.